13276

ANDREWS v. HURST, *ET AL.*

(161 S. E., 881.)

*Messrs. Epps & Levy* and *H. C. Jennings,* for appellants,

*Mr. L. D. Jennings,* for respondent,

November 13, 1931.

The opinion of the Court was delivered by Mr. Justice Bonham.

The plaintiff, as guardian *ad litem* for his infant son, C. H. Andrews, Jr., brought this action in claim and delivery of personal property, to recover the possession of a cow and calf, of the alleged value of $100.00, and damages for the alleged unlawful taking and detention thereof. It is alleged

in the complaint that the property was in the possession of Sam Moore, but was the property of the infant plaintiff; that the defendants, who are the sheriff and deputy sheriff of Sumter County, S. C., took the property from Sam Moore under tax executions against Moore, issued by the treasurer of Sumter County, for taxes due by Moore; that the levy was made by H. G. McKagen, as deputy sheriff, under the instruction of the defendant C. M. Hurst, as sheriff; that McKagen was notified by Sam Moore that the cow and calf were the property of plaintiff, but that, notwithstanding this notice, the officer took the cow and calf and carried them away; that both defendants, shortly after the property was taken, were notified by the father of the plaintiff that the cow and calf were not the property of Sam Moore, and demand was made for the return thereof; that, notwithstanding this notice, defendants willfully and unlawfully refused, and still refuse, to return the property; that said acts were done by defendants while acting as sheriff and deputy sheriff of Sumter County; that the actual value of the cow was $95.00 and the calf was $5.00. The demand was for the return of the property, or the value thereof, $100.00, and $1,400.00 damages for the willful and unlawful taking and detention thereof.

For answer the defendants admit the formal allegations of the complaint. They allege the issuance of the execution for delinquent taxes against the property of Sam Moore, which was placed in the hands of H. G. McKagen, as deputy sheriff, to be by him levied; that, when the officer went to the Moore home for the purpose of making the levy, Moore pointed out the cow and calf and stated, in substance, that they were his, and agreed that the sheriff should sell them at private sale to the best advantage and apply the proceeds to the payment of the delinquent taxes of the said Moore. They specifically deny that Sam Moore informed them that the property was that of the plaintiff, and they specifically deny that C. H. Andrews, the father of the plaintiff, gave them

any information as to the ownership of the cow and calf until after the same had been sold and the proceeds applied to the delinquent taxes of Moore; that they acted at the request of Sam Moore and had no notice of any claim by plaintiff to the property; that no memorandum showing the rights of plaintiff, if he had any, was recorded or required by law; that these defendants acted in good faith through the transaction and in accordance with the expressed wishes of Sam Moore. They deny that the property was of the value of $100.00, and deny the plaintiff has suffered any damage; that C. H. Andrews, father of the infant plaintiff, who had him in charge, if he gave the cow and calf in question to plaintiff, should have had a memorandum in writing recorded, and, when the cow and calf were placed in the custody of Sam Moore, it was the duty of plaintiff's father to have a written instrument recorded showing plaintiff's interest in the property. He did not do this, so that, if plaintiff suffered any loss, it is due to the carelessness of his father, and not to any negligence or wrongdoing of the defendants.

The venue was changed to Lee County, and the case tried at Bishopville before Judge Sease and a jury, and resulted in a verdict for plaintiff, "for the possession of the property or the value thereof, seventy-five dollars, in case delivery cannot be had, twenty-five dollars actual damages and three hundred dollars punitive damages."

A motion for new trial was overruled.

This appeal is founded upon six exceptions on the main case with numerous subdivisions, one exception to the order of the Court directing that all of the testimony be printed in the record. However, counsel for appellant group the issues under five heads, and we will so consider them.

Did the trial Judge err in holding that the defenses set up in Section 5519 of Volume 3 of the Code had no application in a case of this kind? Exceptions 1 and 2.

C. H. Andrews, the father of the plaintiff, testified that in the spring of 1929 he told McKagen, deputy sheriff, that

about a year and a half before that Mr. Wertz gave him
three calves and he gave one to each of his sons and gave
Sam Moore one to raise them. It is admitted that there was
no written memorandum taken and recorded by which Sam
Moore was to raise the calf for the plaintiff, in consideration
of a gift to him of a calf also. On the trial of the case,
defendant's counsel requested the Court to charge the jury
the language of Section 5519 of the Civil Code Volume 3,
and add this: "Now, Gentlemen, I charge you in this con-
nection that a person's taxes, if they are liable for any, be-
come due to the State Oct. 10, then the one who owes such
taxes is the debtor, and the State is the creditor." Section
496, Volume 3, Code.

"The term 'subsequent creditor,' as used in the Statute,
means such creditor who holds a lien on the property before
receiving notice of the unrecorded agreement." *Armour &
Co. v. Ross*, 78 S. C., 294, 58 S. E., 941, 1135.

The following is the language of Section 5519: "Every
agreement between the vendor and vendee, bailor or bailee
of personal property, whereby the vendor or bailor shall re-
serve to himself any interest in the same, shall be null and
void as to subsequent creditors (whether lien creditors or
simple contract creditors) or purchasers for valuable con-
sideration without notice, unless the same be reduced to
writing and recorded in the manner now provided by law
for the recording of mortgages; but nothing herein con-
tained shall apply to livery stable keepers, inn keepers, or
any other persons letting or hiring property for temporary
use or for agricultural purposes, or depositing such property
for the purpose of repairs or work or labor done thereon, or
as a pledge or collateral to a loan."

The judge refused to charge as requested, saying: "I in-
struct you, Gentlemen, that the defense set up in the answer
is no defense in a case of this kind, as the sheriff and his
deputy are not a subsequent creditor, are not a lien or simple
creditor. That is my view of the law and I so instruct you.

You cannot consider that part of the defense set up in the answer." He had just read Section 5519 to the jury.

It is not clear whether his Honor had reference to the sheriff and his deputy in their individual or official capacity. There is no room to doubt that they were acting in their official capacity. They were the officers of the state, engaged in the state's business, the collection of delinquent taxes. Was the state a creditor of Sam Moore, the delinquent taxpayer? The general rule seems to be that a tax is not a debt unless made so by statute.

"In some jurisdictions, however, it has been held that a tax is a debt; and a tax will generally be considered to be a debt within the meaning of a statute when the legislative intent to such effect can be plainly inferred." 26 R. C. L., 25, § 11.

"The defendant insists that a tax is not a debt. It may not be a debt in its most limited sense,—that is, liable to set-off and the other incidents of a simple contract between individuals,—but it is a debt in the highest sense of the word. In this sense it is defined by Bouvier as 'any kind of a just demand '; by the Century Dictionary as 'that which is due from one person to another, whether money, goods, or services'; and by Webster substantially the same, with 'thing owed, obligation, liability,' given as synonyms." *State et al. v. Georgia Co.,* 112 N. C., 34, 17 S. E., 10, 11, 19 L. R. A., 485.

"When a tax is imposed the tax payer becomes a debtor," *Dollar Savings Bank v. United States,* 19 Wall., 227, 22 L. Ed., 80.

But the question is definitely settled in this state by the express language of our statute, embodied in Civil Code 1922 as Section 338, Volume 3:

"*Taxes a Debt Due State, and a First Lien Upon Property—Enforcement.—*

"All taxes, assessments and penalties legally assessed shall be considered and held as a debt payable to the State by

a party against whom the same shall be charged; and such taxes, assessments and penalties shall be a first lien in all cases whatsoever upon the property taxed."

Unquestionably the relation of creditor and debtor existed between the state and Sam Moore. Why then did not the provisions of Section 5519 apply? Why should not that section protect the officers of the state in the collection of the debts due the state, as it is designed to protect other lien creditors or subsequent creditors? To hold that the statute does not protect them puts all such officers at the mercy of any who, by conspiring together, shift the ownership of personal property to suit the occasion, and then sue the officers for levying upon the property of one other than the delinquent taxpayer. Such a policy would greatly increase the already long list of delinquent taxpayers.

It is urged that the deputy sheriff had notice when he took the property that it was the property of plaintiff, and that he and the sheriff had notice before the property was sold that it was not the property of Sam Moore. It was a disputed question whether such notices were given these officers. It was also a disputed question whether the tax for which the levy was made had accrued when the relation of bailor and bailee began between plaintiff and Sam Moore. If it had not begun and plaintiff had not protected himself by the means afforded him by complying with the provisions of Section 5519 by reducing to writing his agreement with Sam Moore and recording it, he has no one to blame but himself, or rather his father, who was acting for him, if he suffers loss. The very purpose of the statute is to protect those who deal with others who are in possession of personal property from claims of third persons who have nothing but oral proof of ownership. One in possession of personal property is presumed to be the owner of it. Any other rule would greatly hamper commerce and trade.

Did the relation of bailor and bailee exist between plaintiff and Sam Moore? Plaintiff is an infant; his father testifies, as heretofore shown, that the cow,

when a calf, was put in possession of Sam Moore to raise it for plaintiff, in return for which service a calf was given to Moore for himself. The calf in dispute here is the off-spring of the calf which Moore, it is alleged, raised for plaintiff.

"Bailment is the delivery of goods for some purpose upon a contract, express or implied, that after the purpose has been fulfilled they shall be re-delivered to the bailor, or otherwise dealt with according to his directions, or kept till he reclaims them." 3 Ency. of Law, 733.

One who comes into the possession of property, so in the hands of a bailee, to which a lien has attached by contract with such bailee, or by operation of law, without notice of such bailment at or before the time such lien attaches, either verbal notice, or notice given by the record of a written agreement, is protected by the statute. And one who becomes a subsequent creditor of such bailee without notice of such agreement is likewise protected.

"It will thus be seen that the law, as it now stands, and as it stood when the agreement here in controversy was made, is no longer confined to *verbal* agreements, but extends to *every agreement,* and that it covers agreements between *bailor* and *bailee,* as well as those between *vendor* and *vendee,* and that all such agreements must be reduced to writing, and recorded like mortgages, in order to make them valid against the claims of subsequent creditors, or purchasers for valuable consideration without notice." *Ludden & Bates v. Dusenbury, 27* S. C., 464, 4 S. E., 60, 64.

Defendants were denied the protection of this statute by the ruling that it did not apply in this case. That was harmful error.

Did his Honor err in charging the jury that, if they found for the plaintiff, they must award actual damages for the retention of the property in question?

Exception III. The charge complained of was in this language: "If you find the defendants took the property

honestly believing it was the property of Sam Moore, and it turned out it was the plaintiff's property, then the defendants would be only liable for what is known as actual damages, the value of the cow and calf at the time, and actual damages for the retention of the cow."

His Honor nowhere in his charge instructs the jury that they *might,* if they found that plaintiff was entitled to a return of the property, at the same time assess damages for the retention, or taking and withholding thereof. See Section 542, Code Civil Proc. In other words, he never instructed them that the giving of damages, actual or punitive, was optional with them. They might, and it is probable that they did, understand that they were obliged by law to give at least actual damages if they found for plaintiff the return of the property. *In this case there is an utter absence of proof of any actual damages to plaintiff by the retention of the cow.*

"If there be no proof of damages, there can be no true verdict for damages. In the case before us the Circuit Judge was clearly in error when he charged the jury that it was not necessary to prove damages if the property was wrongfully withheld. While it may not be necessary, in a suit for claim and delivery, to allege damages, but only to claim them in the demand for relief, *it is indispensable to prove damages; otherwise a verdict for them cannot stand.*" (Italics added). *Norris v. Clinkscales,* 47 S. C., 488, 25 S. E., 797, 803.

We find no merit in the third exception. If the defendant desired a more explicit charge, he should have asked for it.

Questions III and IV may be considered together.

III. Did his Honor err in charging the jury that, if they found for the plaintiff, they must also award actual and punitive damages?

IV. Did his Honor err in charging the jury that, if the defendants had notice that the cow belonged to plaintiff before the defendant seized it, or before they sold it, the jury must find punitive damages?

The specific error complained of is that his Honor charged upon the facts when he said: "Now I instruct you that if you find that the sheriff and his deputy, or the deputy acting for the sheriff, had notice before the taking of the property that it belonged to the plaintiff and nevertheless took the property they not only would be liable for actual damages, but also for what is known as punitive damages, which is allowed and even required in a proper case for the purpose of punishing a wilful, wrongful doer or actor."

Again he said: "If they had no notice of the cow being the property of the plaintiff and if after they took it they did have notice that it was plaintiff's they wilfully and intentionally refused to return the property, then punitive damages also follow."

In the case of *Pickens v. Railroad Company,* 54 S. C., 498, 32 S. E., 567, 571, this is said: "It was error to charge that certain facts constituted negligence, when there were other facts brought out in evidence relative to this question.

In *China v. Sumter,* 51 S. C., 453, 29 S. E., 206, 209, Mr. Chief Justice McIver for the Court said: "Hence whenever a Circuit Judge undertakes to tell the jury that, if a certain fact or series of facts have been proved to their satisfaction, then there would be negligence, he passes beyond the boundary line which separates the province of the judge from that of the jury, and invades the province of the jury by expressing to them his opinion upon a material question of fact in the case, to wit, whether such fact or facts are sufficient to show the want of ordinary care,— whether there was negligence."

In the present case, when the Circuit Judge told the jury that, if the sheriff and his deputy had notice before or after the taking of property that it was not the property of Sam Moore and yet went on and took it, "they would not only be liable for actual damages but also for what is known as punitive damages, which is allowed and even required in a proper case for the purpose of punish-

ing a wilful, wrongful doer or actor," he invaded the province of the jury. It was for them to say whether or not there was such excuse for the taking as would release them from punitive damages, or any damages at all.

The Court has hereinabove held that it was error to hold that Section 5519 of the Code did not apply in this case. That error pervades this question. If the state had a lien for taxes, or was a subsequent creditor without notice of the alleged agreement of bailment, the sheriff and his deputy had a right to take the property and retain it in spite of the notices. The jury was denied the opportunity to pass on this question.

V. Did his Honor err in requiring the appellants to ■ print all the testimony in this case? Exception I in the appendix herewith reported.

This exception must be sustained. The appeal turns almost entirely upon exceptions challenging the charge of the presiding Judge.

The Act of the General Assembly approved March 19, 1923 (33 St. at Large, 107), declares: "Only the necessary and pertinent testimony to which one or more exceptions relate shall be printed, and in case more than the necessary testimony is printed, then the Court shall tax the cost of all testimony unnecessarily printed against the offending party."

Every particle of testimony necessary to the hearing of this appeal could have been encompassed in ten pages instead there are some eighty odd pages. This was not only a hardship on the appellants, who had to pay for the printing but it was a tax upon the time and attention of the Court to be required to read all of it in order to cull the pertinent and sailent parts of it.

It is the judgment of this Court that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for a new trial.

Mr. Chief Justice Blease, and Messrs. Justices Cothran, Stabler and Carter concur.