16912

M. F. STEPHENS v. J. E. HENDRICKS, DELINQUENT TAX
COLLECTOR, ETC.
(83 S. E. (2d) 634)

*Messrs. Julian D. Wyatt,* and *Felix L. Finley, Jr.,* of Pickens, *for Appellant,*

*Messrs. T. C. Callison, Attorney General,* and *J. M. Windham, Assistant Attorney General,* of Columbia, and *W. G. Acker,* of Pickens, *for Respondent,*

September 16, 1954.

EATMON, Acting Associate Justice.

Appellant instituted this action against respondent, Delinquent Tax Collector for Pickens County, to recover possession of an automobile, description of which will later herein appear. The vehicle was seized while it was parked on the lot of one V. A. Wright, a Used Car Dealer, and the levy was made under an execution by the South Carolina Tax Commission issued against Wright for alleged delinquent taxes.

To appellant's Amended Complaint, hereinafter referred to only as "Complaint", counsel for respondent, of whom the

Attorney General for the State of South Carolina is included, filed a Demurrer. Hearing thereon was had in open Court before Hon. William H. Grimball, Presiding Judge of the Thirteenth Judicial Circuit, who issued a verbal Order sustaining the same. Therefrom appellant prosecuted an appeal to this Court.

The material and necessary, for understandable answer to the questions hereinafter discussed, allegations of the Complaint are quoted verbatim from the Record, to wit:

"3. That the plaintiff is the owner of and is entitled to the immediate possession of one 1941 model Chevrolet Passenger Coupe, Motor No. AA1037473, Serial No. 40949, and bearing 1952-1953 South Carolina License tag No. D-21096.

"4. That heretofore, to wit, as plaintiff is informed and believes, on or about the 23rd day of May, 1953, the defendant, J. E. Hendricks, Delinquent Tax Collector of Pickens County, South Carolina, acting, as plaintiff is informed and believes, pursuant to a warrant issued to him by the County Treasurer of Pickens County, South Carolina, and pursuant to a further warrant issued to him by the South Carolina State Tax Commission, levied upon and seized the above described automobile while the same was parked in the used car lot of one V. A. Wright of Easley, who was engaged in the automobile business at said place under the trade name and style of Liberty Drive Used Cars. Plaintiff is informed and believes that said property was seized by the defendant under an execution issued by the County Treasurer of Pickens County, South Carolina, for unpaid county taxes alleged to be due to Pickens County by the said V. A. Wright. Plaintiff is further informed and believes that said property was seized by the defendant under an execution issued by the South Carolina State Tax Commission for the collection of sales and/or use taxes alleged to be due to the State of South Carolina by the said V. A. Wright.

"5. Plaintiff further alleges that his automobile above described was temporarily left with the said V. A. Wright, the

used car dealer, under an agreement that the said V. A. Wright would offer the automobile for sale at a price of Three Hundred Twenty-Five ($325.00) Dollars and if he found a purchaser for said automobile he would notify this plaintiff; that this plaintiff would thereupon make a bill of sale to the purchaser of the automobile and receive the purchase money; that plaintiff would pay to V. A. Wright a commission for his services of ten (10%) per cent of the sale price.

"6. Plaintiff further alleges that his automobile has been illegally and unlawfully seized and is illegally detained by the said J. E. Hendricks in an effort to apply the same to alleged taxes due to Pickens County and to the State of South Carolina by V. A. Wright as aforesaid; that plaintiff is entitled to the immediate possession of his property; that demand for possession thereof has been made upon the defendant and that the defendant fails, neglects and refuses to deliver the same to plaintiff.

"7. That the value of said automobile is the sum of Three Hundred Twenty-Five and no/100's ($325.00) Dollars.

"8. Further this plaintiff alleges that the claims of the State Tax Commission upon which the aforesaid execution was issued is, as plaintiff is informed and believes, based upon field audits prepared by R. C. Griffin and James Childress, agents and employees of the South Carolina State Tax Commission, which audits are now on file in the office of the Tax Commission and which purport to relate to more than one hundred (100) alleged transactions claimed by the Tax Commission through its agents and employees aforesaid to have been sales of used automobiles made by V. A. Wright and to be subject to the South Carolina Sales Tax law. The said V. A. Wright, as plaintiff is informed and believes, is and was at all times covered by said audits a full time employee of a textile manufacturing plant and was a small dealer in used cars during his spare time. Plaintiff is further informed and believes that the said V. A. Wright does not justly owe the South Carolina Tax Commission

anything and that the effort of said Commission through the defendant to subject the automobile owned by this plaintiff to unfounded claims against V. A. Wright is unjust and illegal in that the total amounts in fact and justly due and owing by the said V. A. Wright to the said Tax Commission under the sales tax act did not exceed approximately Two Hundred ($200.00) Dollars, which as hereinafter alleged has been more than paid, whereas, the said agents and employees of the Tax. Commission have prepared and submitted audits without support or foundation in fact and in the manner and means herein set out and upon which information the claims of the South Carolina Tax Commission are solely based; that said audits are incorrect and can form no basis for a just sales tax assessment; that as plaintiff is informed and believes, except as to some two or three sales upon which information was secured from the records of V. A. Wright, the audits and assessment of sales taxes thus claimed to be due by V. A. Wright are based solely upon unverified information secured from unverified records of finance companies consisting of loan records and ledger sheets of the individual borrowers from said finance companies; that, as plaintiff is informed and believes, an overwhelming majority of such finance company loans were made upon the security of used automobiles and other personal and real property; that a large sum of the amounts of money represented items included in the face amounts of such loans and in the audits and assessment which are based upon the face amounts thereof do not represent the purchase or sale of any property subject to the South Carolina Sales Tax act but that such amounts represent only the full face amounts of such finance company loans; that said amounts so derived and included in said audits do not in any event represent the true sale or purchase price of any automobile or other personal property even if such automobile had been in some instances sold by V. A. Wright, but included interest, carrying charges, recording fees, investigation charges and charges for insurance, including in some instances life, health, accident, fire, theft, collision, property

damage and public liability insurance, and in addition thereto no allowance or allowances were made by the said agents and employees in said audits for trade-ins for automobiles which were in fact made in cases where the same may have been sold by V. A. Wright. Plaintiff is further informed and believes that a large number of the finance company transactions included in the audits upon the face amounts of which said assessment of sales taxes was made do not in any way relate to the purchase or sale of any automobile or other property subject to the sales tax act but consisted of renewals and the financing and extension of existing loans on which no sales tax could accrue. Plaintiff is further informed and believes that the agents and employees of the Tax Commission knew or should have known and were advised and informed of this situation and these facts at the time of the making of their audits.

"9. Plaintiff is further informed and believes that practically all, if not the entire amount of sales taxes actually due or claimed to be due by V. A. Wright to the Tax Commission actually accrued and was due to the Tax Commission before the automobile of plaintiff was temporarily left with the said V. A. Wright and for such reason the temporary leaving of the automobile of the plaintiff with the said V. A. Wright is a fortuitous circumstance of which the Tax Commission and the defendant acting in its behalf can take or acquire no advantage. Plaintiff is informed and believes that there has been paid by V. A. Wright to the South Carolina Tax Commission or collected by it from him through the defendant an amount in excess of the sum justly due and owing by V. A. Wright for such sales taxes."

The Demurrer filed by respondent, omitting caption and formal parts, contains the following grounds:

"1. In that the Amended Complaint fails to state facts on its face sufficient to constitute a cause of action for the reason that it shows that the plaintiff delivered the automobile involved to V. A. Wright, clothing him with all of the indicia of ownership, and authorizing and directing him to

advertise the automobile for sale to the public generally, the amended Complaint failing to set forth any compliance by the Plaintiff with any of the provisions of Sec. 308 of Title 57 of the 1952 Code of Laws of this State, and the other laws governing the sale of automobiles in such cases, and failing to show any actual notice or knowledge of the defendant of the claimed rights of the plaintiff in and to the car:

"2. In that sections 65-1464 through 65-1467 of the 1952 Code of Laws for the State of South Carolina provided the only remedy available to Plaintiff, that of making payment under protest and entering suit against the "Commission." That compliance with said sections is a condition precedent and the only method provided to challenge the accuracy of a levy and must be alleged and proved and the Commission and not the Delinquent Tax Collector is the proper party defendant. The Amended Complaint on its face showing a misjoinder of parties and failing to show compliance with the above sections of the code should be dismissed."

Appellant challenges the result in the Court below upon Five Exceptions, with numerous sub-heads under each save the last, but he states only Five Questions in his Brief. However, we find it more convenient to dispose of the case by answering the questions framed by respondent. The first,

"Did the Court err in sustaining the demurrer on the first ground thereof, namely, that the complaint failed to allege compliance by appellant with the bailment statute?"

The statute around which this controversy centers is Title 57, Section 308, S. C. Code of Laws for 1952, and provides:

"Every agreement between the vendor and vendee or the bailor and bailee of personal property whereby the vendor or bailor shall reserve to himself any interest in the property shall be null and void *as to subsequent creditors* (whether lien creditors or simple contract creditors) or purchasers for a valuable consideration *without notice* unless such agreement be *reduced to writing and recorded* in the manner pro-

vided by law for the recording of mortgages." (Italics added.)

There are subsidiary questions which must be answered before a satisfactory conclusion can be reached on the main inquiry and we will deal with these at the outset. Is the cause of action sought to be alleged in any wise dependent upon the statute above quoted? In other words, is the alleged cause of action founded upon any alleged right in the appellant created by or arising from the statute or any exception to the same which he is seeking to enforce here. Plaintiff's alleged cause of action is bottomed solely upon his avowed right of ownership in the property involved; the alleged unlawful and wrongful taking thereof by respondent and the latter's refusal to deliver the same to appellant after demand therefor; and is in no way dependent upon said statute for making out a cause of action. To state it differently, the action here is one at common law by an alleged owner to recover possession of his property alleged to be wrongfully and unlawfully detained by respondent, and depends in no particular upon said statute for efficacy.

Approaching the problem from another viewpoint, what would have been the effect on appellant's cause of action if he had made no reference whatever in his Complaint to the bailment arrangement between Wright and him? Would he have not stated a good cause of action if we wholly disregard such allegations? Again keeping in mind that this is not an action based upon rights created by or arising under the statute or any exception thereto but is founded upon the common law right of an owner to recover possession of his property from another unlawfully withholding possession thereof, we must answer and conclude in the affirmative on the latter question.

From the foregoing it must be obviously evident that the only way the statute here has any applicability or plays any part in the case is by way of defense, a shield with which to defend against plaintiff's right to recover the property sought. We cannot, therefore, escape the

conclusion that the statute creates in respondent a right of defense, an affirmative defense upon which he may rely to defeat the claim of appellant.

Having concluded that the statute constitutes an affirmative defense, the next inquiry is whether or not any duty rested upon appellant to anticipate such defense and negative or avoid it. We think the law on this question is too well settled to admit of doubt. From the case of *A. M. Law & Co. v. Cleveland,* 172 S. C. 200, 173 S. E. 638, 639, the following pertinent quotation is taken, to wit:

" 'It is a general principle that a pleading need and should not, by its averments, anticipate a defense thereto, and negative or avoid it.' Outlines of Pleading, p. 16, by Donald J. Kiser, Editor-inChief of Corpus Juris, citing 31 Cyc. 109, 110.

" 'In equity pleadings the petitioner was allowed to anticipate and avoid a defense, and this was called the charging part of the bill. (Story's Eq. Pl. Sec. 1). *At law, one was never expected to state matters which should come more properly from the other side; it was sufficient for such party to work out his own case.*' 1 Chitty's Pl. 222. Bliss on Code Pleadings, § 200, p. 248." (Emphasis added.)

Testing the proposition by another rule we reach the same result. In 71 C. J. S., Pleading, § 84(b), p. 201, it is stated:

"If matters constituting a defense are alleged in the declaration, complaint, or petition, the pleading is bad unless it also contains other averments which avoid or negative such defense; *but this rule applies only where the facts stated in plaintiff's pleading would be sufficient to state a defense if specially pleaded by defendant in his answer.*" (Emphasis added.)

It may be conceded that alleged in paragraph "5" of the Complaint are matters relating to the defense contemplated by the statute. We consider, however, that the averments thereof are clearly insufficient to state the defense authorized

by the same. In fact, the Demurrer here does not challenge the sufficiency of the Complaint because it affirmatively appears from the allegations thereof that the statute applies as a bar to plaintiff's recovery, but rather challenges the same for plaintiff's failure to allege facts showing that the statute *did not apply,*—an exemption from the statute. It would have been equally futile if respondent had demurred on the ground that the averments affirmatively stated such defense for there is no allegation therein that the agreement was oral, or, if written, was not recorded; none that respondent seized the property without notice of such agreement; and none that the indebtedness under which the seizure was made was incurred subsequent to the agreement mentioned. As a matter of fact, on the latter point there are allegations in paragraph "9" of the Complaint from which it might be reasonably inferred that the debt for which the seizure was made became due prior to said agreement, quoting from said paragraph: "* * * practically all, if not the entire amount of sales taxes actually due or claimed to be due by V. A. Wright to the Tax Commission actually accrued and was due to the Tax Commission before the automobile of Plaintiff was temporarily left with the said V. A. Wright".

Neither counsel for appellant nor respondent have cited any decision from this jurisdiction dealing with the precise issue here and we have found none in our independent search on the subject. Respondent, however, places great reliance upon the case of *Andrews v. Hurst,* 163 S. C. 86, 161 S. E. 331, 333, as sustaining his position. But careful analysis of the case reveals that it affords no support therefor, and, if anything, tends more to sustain the position of appellant. There are several differentiating features but only a few need be mentioned to demonstrate its inapplicability as controlling authority here. It seems reasonable to infer from the facts stated in the case that the plaintiff did not plead compliance with the bailment statute and there is nothing therein even to indicate that any facts relating to the same were alleged in the Complaint. There was no Demurrer to the Complaint.

The statute in issue was affirmatively pleaded in the Answer. A trial was held on the merits and the appeal involved, among other things, failure of the Trial Judge to instruct the jury on such defense *set up in the answer*. The following language from the decision is enlightening and has some indirect bearing upon the question:

"It is urged that the deputy sheriff had notice when he took the property that it was the property of plaintiff, and that he and the sheriff had notice before the property was sold that it was not the property of Sam Moore. *It was a disputed question whether such notices were given these officers. It was also a disputed question whether the tax for which the levy was made had accrued when the relation of bailor and bailee began between plaintiff and Sam Moore.*" (Emphasis added.)

Considering the above quotation in connection with the other language of the case, it is inferable therefrom that the parties and the Court treated the duty of pleading the statute and proving on trial facts to support the same as the affirmative obligation of defendant there. That if the facts were disputed it was ultimately up to the Jury to decide the issues thus made. Such considerations are entitled to some weight in our determination of the question before us. Nothing is contained therein that even intimates or from which it might be reasonably inferred that a plaintiff in an action for recovery of his personal property seized by an officer under authority of a tax execution against a third party, is required to affirmatively allege compliance with the bailment statute as a condition precedent to stating a cause of action good against Demurrer.

The other cases cited by respondent have no controlling effect and need not receive further attention or comment.

The views hereinabove expressed find general analogous support from the Arizona case of *Gold v. Killeen,* 44 Ariz. 29, 33 P. (2d) 595, 598, 94 A. L. R. 448. The facts in the case are these, briefly stated: Plaintiff instituted this action to recover from the estate of the Deceased, Martin Gold,

compensation for services rendered the Testator under an alleged contract of employment. Plaintiff averred that he had been employed by deceased upon the promise that at the latter's death he would receive adequate compensation for such services. That after working some years he was compelled to leave the employment because of the conduct of his employer. Several years later Testator died and thereafter this action was commenced to recover for the services that the employee had rendered during the years that he remained with Testator. Defendant demurred to the Complaint on the ground, among others, that the Statute of Frauds barred recovery. Said the Court thereabout:

"Neither does subdivision 8, which brings within the statute agreements by their terms 'not to be performed during the lifetime of the promisor,' *have the effect of making a general demurrer to the complaint good, since the allegations thereof do not disclose that the promise or agreement relied on was not in writing.* If this appeared from the averments the agreement would come within this provision and no action could be brought upon it, since it was not to be performed during the lifetime of the promisor." (Italics added.)

Finally, and we think conclusive of the question here, is the fact that this Court is already committed to the view that a plea of *bona fide* purchaser for value, without notice, is an affirmative defense and must be pled and proved by the party thereon relying. As was said in the case of *Merck v. Merck,* 95 S. C. 328, 78 S. E. 1027, 1031, " 'The defense of *bona fide* purchase[r] without notice is an equitable defense, must be set out in the answer, and must be sustained by party who erects it as a shield.' " See also *Carr v. Mouzon,* 93 S. C. 161, 76 S. E. 201.

The statute above quoted is nothing more nor less than an equitable defense for the protection of innocent (*bona fide*) purchasers for value, without notice, owing its existence to an edict of the Legislature, and any party relying thereon must, to derive benefits therefrom,

plead and prove the same unless his adversary has alleged in his pleading facts which affirmatively erect the statute as a bar to the latter's claim or demand.

Respondent's second question is stated in these words:

"Did His Honor err in sustaining respondent's demurrer on the second ground thereof, namely, that appellant's only remedy is for appellant to pay tax under protest and enter suit against tax commission under sections 65-1464 through 65-1467 of the 1952 Code?"

To support his position that the Circuit Judge correctly sustained the Demurrer on this ground, respondent relies upon Title 65, Sections 1465, 1466 and 1467, South Carolina Code of Laws for 1952. Section 1466 thereof provides:

"In case any sales or use tax shall be charged by the Commission against any person and the Commission shall claim the payment of the tax so charged or shall take any step or proceedings to collect it, the person against whom such step or proceedings shall be taken shall, if he conceives the same to be unjust or illegal for any cause, pay the tax, which shall include the penalties, under protest in writing in such funds and moneys as the Commission shall be authorized to receive. And upon such payment being made the Commission shall pay the taxes and penalties, if any, so collected into the State Treasury as provided by law, giving notice at the time to the State Treasurer that the payment was made under protest."

It will be observed from the plain language of the foregoing section that the same refers only to payment of taxes by *a person charged with the payment thereof, a tax debtor,* but there is no reference therein to payment by *a person* of taxes charged against *a third party*. Section 1467 authorizes "A person paying a tax under the provisions of § 65-1466" to bring an action in the Court of Common Pleas for recovery of *any such payments* unjustly or illegally collected. Again the language clearly and unmistakably refers to taxes illegally or unjustly paid by a *tax debtor* and makes no men-

tion whatever to payment of such taxes by a person on behalf of *a third party tax debtor.*

Section 1465, after setting forth that no injunction shall be issued to prevent the collection of sales or use tax, contains the following pertinent provisions: "But in all cases *the person against whom any sales or use tax shall stand charged* by the Commission *shall be required to pay* it in such funds and moneys as the Commission shall be authorized by law to receive and thereupon shall have his remedy *as provided in §§ 65-1466 and 65-1467."* (Emphasis added.)

It may be readily conceded that with respect to a defaulting taxpayer the remedy provided in Title 65, Section 1467, is exclusive. *Bomar v. City of Spartanburg,* 181 S. C. 453, 187 S. E. 921, 925. However, the facts of the case at bar do not bring it within the terms and provisions of either of the cited statutes. Here the plaintiff who is seeking to recover his property is not a "defaulting taxpayer". He is not "the person against whom any sales or use taxes stand charged". The statutes do not provide any remedy for a citizen to test the title and right of possession to his property when he owes no tax and his property has been illegally seized for the taxes of a third party. When no provision is made for the owner of property, not a defaulting taxpayer, to test the title and right to possession of his property, then obviously claim and delivery is the proper remedy.

To illustrate just how unreasonable and ill-founded is the construction of the statutes contended for by respondent here, let us suppose that Wright, the Used Car Dealer, had been indebted to the Tax Commission in the sum of $100,000.00. Under the reasoning of respondent's counsel appellant would have no remedy here except to pay the amount of such taxes and then bring an action to recover the same. No discussion is necessary to demonstrate the absurdity of such a contention. Construction will not be given by the Court to a statute which would make its application unreasonable or absurd.

It was error to sustain the Demurrer on either ground, and the Order of the Circuit Court is hereby reversed.

TAYLOR, J., concurs.

STUKES, OXNER and LEGGE, JJ., concur in result.