UNITED STATES of America,
Appellant,

v.

CLOVER SPINNING MILLS COMPANY,
Inc., South Carolina Employment Se-
curity Commission, South Carolina Tax
Commission, and The County Treasurer
of York, South Carolina, and the Town
of Clover, South Carolina, Appellees.

No. 10529.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 6, 1966.

Decided Dec. 9, 1966.

John C. Eldridge, Atty., Dept. of Justice (John W. Douglas, Asst. Atty. Gen., and Morton Hollander, Atty., Dept. of Justice, and John C. Williams, U. S. Atty., on brief), for appellant.

Joseph C. Coleman, Asst. Atty. Gen. of South Carolina (Daniel R. McLeod, Atty. Gen. of South Carolina, on brief), for appellee South Carolina Tax Commission.

Nolen L. Brunson, Rock Hill, S. C. (John M. Spratt, York, S. C., James M. Dickson, Clover, S. C., and Hayes, Hayes & Brunson, Rock Hill, S. C., on brief), for appellees County Treasurer of York, S. C., and Town of Clover, S. C.

Before BOREMAN, J. SPENCER BELL and WINTER, Circuit Judges.

J. SPENCER BELL, Circuit Judge:

The United States appeals from an order of the district court. In 1959, Clover Spinning Mills Company, Inc., a Delaware corporation with its principal place of business at Clover, South Carolina, borrowed $300,000.00 from the Small Business Administration, evidenced by a note secured by two mortgages. One mortgage covered the real estate and the other the chattels of the mortgagor corporation located in the town of Clover, York County, South Carolina. In 1961, the corporation borrowed an additional $50,000.00 which was also secured by a mortgage covering both its realty and chattels. These mortgages were properly recorded on December 16, 1959, and March 27, 1961, respectively.

In April 1962 the debtor defaulted on these loans whereupon, under the terms of both loans, the entire balance became due and payable. On November 30, 1962, the United States commenced an action in the district court alleging that the mortgagor was insolvent and seeking the appointment of a receiver to take possession of the property, sell the same under the mortgages, and apply the proceeds to the debt of the United States. No answer was ever filed to this complaint. On November 16, 1962, the mortgagor filed a petition for an arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C. §§ 701–799 (1964). Pursuant to this petition, the court enjoined the foreclosure and authorized the operation of the mill. On October 25, 1963, the plan of arrangement having failed, the injunction was dissolved and the plaintiff authorized to proceed with its foreclosure. On December 6, 1963, the referee terminated the bankruptcy proceedings. On April 8, 1964, the court entered judgment

for the United States in the principal sum of $263,436.56. The property brought approximately $160,130.00 from which must be deducted the receiver's expenses. This appeal involves the priority of certain claims against the proceeds which were filed in the foreclosure action by the South Carolina Tax Commission for unpaid withholding taxes and by the County of York and the town of Clover for unpaid personal propert. taxes.

■■ The determination of the relative priority of the claims here involved is a federal question and this is true whether the debt owed to the federal government is based upon taxes or money loaned through some government program. United States v. Security Trust & Savings Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950); United States v. Waddill, Holland & Flinn, Inc., 323 U.S. 353, 356, 65 S.Ct. 304, 89 L.Ed. 294 (1945). This court has held that the priority of debt claims or lien claims of the Small Business Administration vis-à-vis the claims of private individuals or state agencies is determined by federal law. W. T. Jones & Co. v. Foodco Realty, Inc., 318 F.2d 881, 887 (4 Cir. 1963). We think it clear that the federal insolvency statute applies and that it is fatal to the claim of the South Carolina Tax Commission for income taxes to be withheld from the wages of the debtor corporation's employees. The district court's conclusion to the contrary is in error.

■ It is true, of course, that not only must the debtor be insolvent but the "insolvency" contemplated by 31 U.S.C. § 191 (1964) [1] must be manifested by one of the acts specified in the statute, i. e., an act of bankruptcy, a voluntary assignment of the debtor's property, or an attachment of the property of an abscond-

ing, concealed, or absent debtor. W. T. Jones & Co. v. Foodco Realty, Inc., supra. No one disputes the fact that the debtor was insolvent, and this record makes it abundantly clear that it was insolvent both in the sense that it could not pay its current debts and in the bankruptcy sense that its liabilities greatly exceeded its assets. We think this record also discloses at least two acts of the debtor, either of which brings it within the statute. By suffering the appointment of a receiver to take charge of all of its property while insolvent and unable to pay its debts, the debtor here committed the fifth act of bankruptcy, 11 U.S.C. § 21 (a) (5) (1964). We are aware that a receivership of a specific property for purposes of foreclosure as distinguished from a general receivership has been held not to constitute the fifth act of bankruptcy. Elfast v. Lamb, 111 F.2d 434, 436 (2 Cir. 1940). We think, however, that the receivership to which the debtor here submitted was for all practical purposes a general receivership and therefore clearly distinguishable on its facts from that line of cases.

The debtor's mortgages to the Small Business Administration covered its plant and machinery, which for all practical purposes were its total assets at the time this action was begun. Furthermore, a receivership upon the motion of a mortgagee, incidental to the enforcement of its lien where other creditors intervene and the receiver takes charge of all the debtor's assets in the jurisdiction for the benefit of its creditors is thereby converted into a general receivership which falls within the fifth act of bankruptcy. Cf. State of Illinois ex rel. Gordon v. Campbell, 329 U.S. 362, 67 S. Ct. 340, 91 L.Ed. 348 (1946); [2] United

---

1. "§ 191. *Priority established.*
"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not hav-

ing sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

2. After expressly reserving the question whether the fifth act of bankruptcy neces-

States v. State of Texas, 314 U.S. 480, 488, 62 S.Ct. 350, 86 L.Ed. 356 (1941). In the instant case other creditors did intervene and the receiver took over the entire assets of the debtor which consisted of its mill and machinery at Clover, South Carolina.

Secondly, we think the case is brought within 31 U.S.C. § 191 by the fact that the officers and managers abandoned the debtor's property and absented themselves from the state long before the receiver assumed possession. The property of "an absconding, concealed or absent debtor" is made subject to the statute's provisions. The officers and managers of the debtor corporation had for several months before the appointment of a receiver abandoned operations and left the plant and equipment standing idle and unattended.[3]

In its order appointing a receiver, the district court found that the debtor's property was idle and unprotected by insurance from fire and other hazards. At no time did the debtor deny the allegations of the petition alleging insolvency nor after the failure of its Chapter XI petition did it resist the appointment of a receiver to take over what amounted to the total assets of the corporation.

 Although the debtor's president was served by mail in New York, neither he nor any employee of the debtor ever appeared in the case. While we do not rely upon the point, we think also that the tacit consent of the debtor to the appointment of a receiver by its failure to file answer or appear in the suit was in law equivalent to a voluntary assignment of its assets within the intent and meaning of the statute. Cf. People of State of New York v. Maclay, 288 U.S. 290, 291, 53 S.Ct. 323, 77 L.Ed. 754 (1933); United States v. Butterworth-Judson Corp., 269 U.S. 504, 513–514, 46 S.Ct. 179, 70 L.Ed. 380 (1926); Price v. United States, 269 U.S. 492, 502, 46 S. Ct. 180, 70 L.Ed. 373 (1926).[4] We hold, therefore, that 31 U.S.C. § 191 does apply, and we now turn to the question of whether the waiver of that priority by Congress under the provisions of 15 U.S.

---

sarily requires a "general" receivership, the Court said, in considering whether appointment of a receiver for all the debtor's property at the instance of the Director of Labor of Illinois to protect a claim for state unemployment compensation taxes constituted a general receivership:

"[T]hough the receiver was appointed at the instance of a secured creditor, as in United States v. State of Texas, 314 U.S. 480, 483–484, [62 S.Ct. 350, [351], 352, 86 L.Ed. 356,] 'any limitations upon the operation of § 3466 [which] might otherwise have flowed from this circumstance * * * were removed by the subsequent character of the proceeding.' The receiver was placed in control of all the assets of the Chicago Waste and Textile Company, and all of the assets were liquidated. At least one party other than the secured creditor which had instituted the proceeding, namely, the United States, was allowed to intervene and was heard. 'We think that realities require us to treat the proceeding as a general equity receivership within the scope of § 3466.' United States v. State of Texas, supra."

3. We quote from the final report of the receiver to the court:

"To further inform the Court regarding the condition of the mill, it should be. reported that the Receiver found that the mill had no electricity, was unattended by anyone and due to the condition of the roof, the floors of the mill had pools of water throughout. The machinery, which was exposed to the elements to a great extent, was corroded extensively. The gates on the fences surrounding the mill had no locks. The warehouses were open and had apparently been vandalised. From all the conditions above, it appeared that no effort had been made to protect this property, not only in the recent past, but most probably, for many months preceding the appointment of a Receiver." Record, p. 80.

4. The Sixth Circuit has held that "[t]he filing of a Chapter XIII petition by the Debtor, while insolvent, was sufficient to invoke the priority of the United States as a voluntary assignment under 31 U.S.C., Section 191." In re Belkin, 358 F.2d 378, 382 (6 Cir. 1966). The reasoning of the court seems to us to be equally applicable to the filing of a Chapter XI petition.

C. § 646 (1964)[5] applies with respect to the South Carolina Tax Commission's claim for unpaid withholding taxes.

■ We think the state's concession in its brief that its claim for unpaid income taxes which under state law should have been withheld from employees' wages did not constitute "taxes due on the property" within the meaning of 15 U.S.C. § 646 is fatal to its claim. In re Lehigh Valley Mills, Inc., 341 F.2d 398 (3 Cir. 1965). We are unable to follow the state's contention that its tax statutes, which provide that income taxes withheld under its statutes shall be "deemed" held in trust by the employer for the state, could defeat the federal priority statute. Whatever might have been the result had the state been able to point to any sum or sums actually withheld by the employer for this purpose, no such fund here existed, and in the absence of any res,[6] no trust existed which could defeat the federal government's claim. A careful reading of the state statutes does not indicate an intent to create a "trust" for the benefit of the state in other property of an employer who fails to perform his withholding obligation.[7] We need not, therefore, consider the relative rights of the parties in this case if such had been the purport of the statute.

■ We now turn to the claims of the County of York and the town of Clover for unpaid ad valorem taxes assessed against the realty and chattels of the debtor for the years 1962 and 1963. They concede and we agree that the legal position of the two local authorities in this action is identical, and we shall, therefore, consider them together. The Government has conceded that the real property taxes of the two for the years involved did constitute a lien upon the debtor's assets superior to the Government's claim under its mortgages because of the waiver contained in 15 U.S.C. § 646. There remains the question of whether the local authorities' claims for ad valorem taxes assessed against the debtor corporation's personalty constitute a lien superior to that of the Government's mortgages. We think that the local tax claims are superior.

■ To the extent that the personal property tax claims give rise to a lien upon the debtor's personal property and, therefore, upon the proceeds from the sale of the personalty it is clear that the waiver provided by 15 U.S.C. § 646 removes the claim from the provisions of 31 U.S.C. § 191. We think it obvious that it was the purpose of the Congress to place the Small Business Administration's security claims against property in the several states upon the same level as those held by private parties.[8] In con-

---

5. "§ 646. *Liens.*
"Any interest held by the Administration in property, as security for a loan, shall be subordinate to any lien on such property for taxes due on the property to a State, or political subdivision thereof, in any case where such lien would, under applicable State law, be superior to such interest if such interest were held by any party other than the United States."

6. No contention is made that the personalty here involved was purchased with funds withheld from taxes—indeed the property was mortgaged of record to the Small Business Administration prior to the date the state's claim accrued.

7. Nor could such effort withstand the Government's priority claim. Cf. United States v. Buffalo Sav. Bank, 371 U.S. 228, 83 S.Ct. 314, 9 L.Ed.2d 283 (1963).

8. See S.Rep. No. 1714, 85th Cong., 2d Sess. (1958), which reads:
"SUBORDINATION OF SBA CLAIMS TO STATE AND LOCAL TAX LIENS
"This amendment was proposed by S. 3319 and was endorsed by the Small Business Administration, with the approval of the Bureau of the Budget. *It is designed to place SBA claims against the assets of small-business borrowers in a subordinate position to the claims of State and local tax liens against such assets.* This provision is consistent with other provisions of law and clarifies the position of the SBA in actions brought to realize its interest in the assets of borrowers who have defaulted under SBA loans." 1958 U.S. Code Cong. & Ad. News, Vol. 2, p. 3071 at 3080. [Emphasis added.]

formity with the express directive of the statute, we turn to the state law which is determinative. There is no opinion of the Supreme Court of the State in point. Cf. United States v. State of South Carolina, 227 S.C. 187, 87 S.E.2d 577 (1955).

Two statutes are directly in point. Section 65–2701 [9] of the South Carolina Code provides that "[a]ll taxes * * * shall be a first lien * * * in all cases whatsoever upon the property taxed." The succeeding section (65–2702) [10] provides: "As of December thirty-first a first lien shall attach to all real and personal property for taxes to be paid during the ensuing year * * *." We find it extremely difficult to follow the Government's rather attenuated argument that the case law or the other statutes of the state divest the quoted statutes of what appears to us a rather plain legislative intent that personal property taxes shall constitute a lien upon the property taxed and that such lien shall attach as of the last day of the preceding year.

We think the Government's dependence upon certain language of the court in Town of Myrtle Beach v. Holliday, 203 S.C. 25, 26 S.E.2d 12 (1943), to support its position is misplaced. That was an action by the town against local tax collectors to have abated a tax against the city water system, which property had been acquired from a private corporation between the first of the tax year and the date on which the tax assessment against the property was put on the county tax books. The facts were agreed and the questions for the court were framed by the parties as follows:

"1. Has all state and county tax on the water works system at Myrtle Beach, South Carolina, been cancelled and the lien therefor for the year 1941 extinguished as the result of acquisition of title thereto on May 29th, 1941, by the Town of Myrtle Beach?

"2. If the lien for the entire year of 1941 is not extinguished, is the town liable to tax for more than the portion of the year during which the property was owned by * * * [the private corporation]?"

The court held that all taxes for the year were abated. In reaching its conclusion, the court spoke in terms of the distinction between "only an inchoate lien for taxes" and an "effectual lien." However, we think a careful reading will show that the real basis of the court's decision lies in its finding that under the applicable statutes "at the time plaintiff acquired this property, the tax for the year 1941 had not been assessed, and was not due and payable." Id. at 29, 26 S.E.2d at 13. We think this holding that the incidence of the tax—the debt itself—did not come into existence until the assessment was made up and

---

9. *"Taxes a debt due State and a first lien upon property; enforcement.*—All taxes, assessments and penalties legally assessed shall be considered and held as a debt payable to the State by the person against whom they shall be charged and such taxes, assessments and penalties shall be a first lien in all cases whatsoever upon the property taxed, the lien to attach at the beginning of the fiscal year during which the tax is levied. Such taxes shall be first paid out of assets of any estate of deceased persons or held in trust as assignee or trustee or the proceeds of any property held on execution or attachment. The county treasurer may enforce such lien by execution against such property or, if it cannot be levied on, he may proceed by action at law against the person holding such property." S. C. Code § 65–2701 (1962).

10. *"When lien attaches; procedure when property about to be moved.*—As of December thirty-first a first lien shall attach to all real and personal property for taxes to be paid during the ensuing year, and in case such property is about to be removed from the State by bankruptcy proceedings or otherwise or is about to be taken from the jurisdiction of the county before taxes are due in the county and payable for any year, the treasurer of such county shall immediately issue his execution on such property and the sheriff of the county shall proceed to collect the taxes due on such property." S.C. Code § 65–2702 (1962).

placed on the county's tax books, so that ownership of the property by a tax exempt authority at the time of assessment negatived the retroactive provisions of the general tax statutes of the state (S.C. Code §§ 65–2701, 65–2702 (1962)), is not authority for the Government's position here. As we hereafter show, the property in this case was not beneficially owned by a tax exempt authority at the time the assessments involved in this case were made, and there is therefore no reason to disturb the retroactive provisions of the statutes involved.

The Government next contends that state law specifically provides that a judgment shall not constitute a lien upon personalty of the judgment debtor until there is a levy and that, since a tax assessment on personal property is equivalent to a judgment against the tax debtor, it is not therefore a lien on his personal property. Again, the answer to this argument is that the South Carolina statutes specifically provide that a tax assessment shall constitute a lien on the taxpayer's personalty,[11] whereas section 10–1711 of the Code of South Carolina specifically provides that a judgment shall not constitute such a lien. We cannot accept the Government's argument that because the state courts, in holding that a tax assessment constitutes a lien on real estate, often discuss the analogous effect of a recorded judgment on the real estate of the judgment debtor (Cf. Charleston Heights Co. v. City Council of Charleston, 138 S.C. 187, 136 S.E. 393 (1926)), it follows that a tax assessment on personalty does not constitute a lien thereon. Nor do we think it follows from the numerous statutes setting up alternative methods of subjecting personal property to the incidence of a tax, e. g., by distress and sale, by suit and attachment, vitiate the legislature's expressed intent in the above-quoted sections of the South Carolina Code to effect a lien on personalty from the last day of the year prior to the assessment.

The Government also contends that under the South Carolina law when a chattel mortgagor defaults or otherwise breaks a condition of the mortgage, title and the right to possession of the chattel become vested in the chattel mortgagee. Childers v. Judson Mills Store Co., 189 S.C. 224, 200 S.E. 770 (1939); Lee v. National Furniture Stores, Inc., 163 S.C. 204, 161 S.E. 450 (1931); General Motors Acceptance Corp. v. Hanahan, 146 S.C. 257, 143 S.E. 820 (1928). From this premise, the Government argues that when the debtor corporation here defaulted in April 1962, both title and the right to possession of the chattels involved became vested in the United States; that under South Carolina law (S.C.Code § 65–1522(17) (1962)) property of the United States is exempted from taxes; and that therefore the personal property taxes here involved (for the years 1962 and 1963) were not validly assessed. Cf. Town of Myrtle Beach v. Holliday, supra. We cannot agree that the interest of the Small Business Administration in these chattels ever exceeded a security interest. It could not have taken the chattels and sold them without accounting to the debtor for any equity which it may have had therein over and above its security interest. Castell v. Stephenson Finance Company, 244 S.C. 45, 135 S.E.2d 311 (1964); Johnson Cotton Company v. Cannon, 242 S.C. 42, 129 S.E.2d 750 (1963); Speizman v. Guill, 202 S.C. 498, 25 S.E.2d 731 (1943). Even if it be assumed that the mortgages did not require a sale upon possession of the chattels being obtained by the Small Business Administration upon default, nevertheless it is clear that the mortgagee never undertook to pursue such a remedy. Instead it petitioned the court for the appointment of a receiver to make a sale and to account for the proceeds to all the parties concerned, and this was done. This being true, the interest of the Small Business Administration in the

---

11. See notes 9 and 10, supra.

property here involved never exceeded a security interest and, therefore, the very purpose of the waiver statute (15 U.S.C. § 646) was to place this property in the same position that it would have been if owned by a private party under the state law. We find no authority for holding that a chattel would be exempt from ad valorem taxes simply because it was covered by a defaulted chattel mortgage. We must also reject the Government's attempt to draw an analogy from the South Carolina cases holding that an unrecorded bailment makes the property involved subject to the bailee's taxes. Andrews v. Hurst, 163 S.C. 86, 161 S.E. 331 (1931); Stephens v. Hendricks, 226 S.C. 79, 83 S.E.2d 634 (1954). Even assuming the converse is true—that a recorded contract of bailment would exempt the property from taxes assessed against the bailee—we think a bailor's interest in property clearly distinguishable from that of a chattel mortgagee. In the bailor-bailee relationship the incidence of the tax and the obligation to report the property for purposes of taxation may fall on the bailor, but clearly these obligations are upon the mortgagor in this case. Furthermore the standard provisions of the Small Business Administration mortgage require the mortgagor to pay the taxes and empower the Small Business Administration to do so upon his failure and to add the amount thereof to his debt. Finally we do not think that Congress intended that the Small Business Administration's security interest in this property should take precedence over the state's right to require all property in the state to bear its fair share of the tax burden, and this is particularly true as to local taxes which are levied to pay for services which in the main protect and preserve the property. The case is remanded for judgment in accordance with this opinion.

Reversed in part and remanded.