**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

John Musick, Respondent,

v.

Thomas L. Dicks and Robert E. Dicks, Jr., Appellants.

Appellate Case No. 2012-212773

―――――――――

Appeal From Horry County
Cynthia Graham Howe, Master-in-Equity

―――――――――

Unpublished Opinion No. 2014-UP-284
Heard December 11, 2013 – Filed July 9, 2014

―――――――――

**AFFIRMED**

―――――――――

Demetri K. Koutrakos and Mary Dameron Milliken, of Callison Tighe & Robinson, LLC, of Columbia, for Appellants.

Thomas C. Brittain and Mary Madison B. Langway, of The Brittain Law Firm, P.A., of Myrtle Beach, for Respondent.

―――――――――

**PER CURIAM:** Thomas and Robert Dicks appeal the order of the master-in-equity holding they cannot subdivide their property in Long Bay Estates (Property). We affirm.

(1) We find the master did not err in construing the 1972 Order to find only the "Grantors" had a right to revise lot lines and Carmen F. Ward and Gene F. Lewis were the "Grantors" contemplated in the 1972 Order. *See City of N. Myrtle Beach v. E. Cherry Grove Realty Co.*, 397 S.C. 497, 503, 725 S.E.2d 676, 679 (2012) ("As a general rule, judgments are to be construed like other written instruments. The determinative factor is the intent of the court, as gathered, not from an isolated part thereof, but from all the parts of the judgment itself. Hence, in construing a judgment, it should be examined and considered in its entirety."); *RV Resort & Yacht Club Owners Ass'n, v. BillyBob's Marina, Inc.*, 386 S.C. 313, 321, 688 S.E.2d 555, 559 (2010) (stating the paramount rule of construction of a restrictive covenant is to ascertain and give effect to the intent of the parties as determined from the whole document); *Buffington v. T.O.E. Enters.*, 383 S.C. 388, 392, 680 S.E.2d 289, 291 (2009) ("A restriction on the use of the property must be created in express terms or by plain and unmistakable implication, and all such restrictions are to be strictly construed, with all doubts resolved in favor of the free use of property."). We believe the 1972 Order was ambiguous as to who would be considered the Grantor and therefore the master did not err in considering extrinsic evidence. The 1958 Restrictions for Long Bay Estates did not define the term "Grantor." Nursery Realty Corporation owned the Long Bay Estates property at that time of the creation of the 1958 Restrictions and thus was the "Grantor." In 1968, Nursery Realty Corporation transferred ownership of the remaining property in Long Bay Estates to Ward and Lewis along with "assets, powers, or reservations of any kind and nature" reserved to Nursery Realty Corporation. Accordingly, Ward and Lewis took on the role of Grantor under the 1958 Restrictions and were the "Grantor[s]" referred to in the 1972 Order. The 1972 Order was the result of a settlement agreement in an action brought by Ward and Lewis to clarify their rights in Long Bay Estates. Considering the complaint in the action and the entire 1972 Order, we find the circuit court in that action intended to expand the 1958 Restrictions to the Property, including the Grantor's right to revise lot arrangement prior to the sale of the Property.

(2) We find no merit to the Dicks' argument that if the 1972 Order is ambiguous, it should be construed in favor of the free use of property. *See Hardy v. Aiken*, 369 S.C. 160, 166, 631 S.E.2d 539, 542 (2006) ("[T]he rule of strict construction should not be used to defeat the plain and obvious purpose of the restrictive covenants.").

(3) We find no merit to the Dicks' argument that the master erred in holding the Property had always been sold as one lot. Even if a prior plat showed the Property divided into seven lots, Ward had the right to revise the lot arrangement of the Property, which she did by selling the property to David and Leigh Meese as one lot. The Meeses sold the Property to Thomas Dicks as one lot. The lot had a single tax number. The Property was never sold as more than one lot until Thomas Dicks conveyed to his brother Robert Dicks three lots as shown on a survey he had prepared for the "Resubdivision" of the Property.

(4) We find no merit to the Dicks' assertion this court's statement in the prior opinion, *Musick v. Dicks*, Op. No. 2010-UP-351 (S.C. Ct. App. filed July 7, 2010), concerning the 1955 Plat and a map attached to the 1972 Order showing Blocks 28 and 29 divided into seven different lots was a finding of fact and now is the law of the case. This statement was merely a description of the plat and map and not a legal conclusion.

(5) We find no merit to the Dicks' argument the master erred in finding that Ward had a right to subdivide the Property. They assert: "No one had the right to subdivide any lot." The master actually held: "It is further found Carmen F. Ward, grantor, did *not* subdivide Blocks 28 and 29, which was her right as set out in [the 1972 Order]." (Emphasis added). Subdivide means "To divide a part into smaller parts; to separate into smaller divisions." *Black's Law Dictionary* 1424 (6th ed. 1990). Ward did not divide any lot. Instead, she changed boundary lines to combine the lots of Blocks 28 and 29 into one lot, which she had the right to do pursuant to the 1972 Order.

(6) We find no reversible error in the master's statement that "[t]he majority of Blocks 28 and 29 is wetlands, . . . which makes [the Dicks' proposed division] somewhat impractical." This statement had no bearing on the master's ruling that only Ward and Lewis could revise the lot lines. *See McCall v. Finley*, 294 S.C. 1, 4, 362 S.E.2d 26, 28 (Ct. App. 1987) ("[W]hatever doesn't make any difference, doesn't matter.").

(7) We find the master did not err in finding the Dicks were not protected by the Shelter Rule because the Meeses had constructive notice of the restrictions. *See Spence v. Spence*, 368 S.C. 106, 120, 628 S.E.2d 869, 876 (2006) ("Constructive or inquiry notice in the context of a real estate transaction also may arise when a party becomes aware or should have become aware of certain facts which, if investigated, would reveal the claim of another. The party will be charged by operation of law with all knowledge that an investigation by a reasonably cautious

and prudent purchaser would have revealed."); *Stephens v. Hendricks*, 226 S.C. 79, 91, 83 S.E.2d 634, 640 (1954) ("A plea of bona fide purchaser for value, without notice, is an affirmative defense and must be [pleaded] and proved by the party thereon relying."). The Meeses' closing attorney testified that the Meeses had knowledge at some point that there was a strong possibility that the restrictive covenants applied to the Property. On re-cross examination, he admitted this would have been something he discussed with them contemporaneously with the closing rather than after they bought the Property. David Meese acknowledged that at the time he purchased the property, he was aware there were restrictive covenants, but he did not remember the details. Although Leigh Meese initially testified that at the time of their closing, she did not have notice of any restrictions that would have encumbered the Property, she subsequently testified "I remember there were issues with the property. I can't place my awareness of those issues with respect to our acquisition and sale of the property." The Meeses had notice of the existence of restrictive covenants that encumbered Long Bay Estates and there was a "strong possibility" that the restrictions might apply to the Property. This awareness of the existence of restrictive covenants provided them with notice of all of the restrictions, including the restriction against subdivision.

**AFFIRMED.**

**HUFF, GEATHERS, and LOCKEMY, JJ., concur.**