18899

HOME INDEMNITY COMPANY, Appellant, v. HARLEYSVILLE
MUTUAL INSURANCE COMPANY, Respondent
(166 S. E. (2d) 819)

*Messrs. Haynsworth, Perry, Bryant, Marion & John-stone,* of Greenville, *for Appellant,*

454

*Messrs. Leatherwood, Walker, Todd & Mann,* of Greenville, *for Respondent,*

April 7, 1969.

Moss, Chief Justice.

This action is one under the "Uniform Declaratory Judgments Act," Section 10-2001 *et seq.*, 1962 Code of Laws. It is brought by Home Indemnity Company, the appellant herein, against Harleysville Mutual Insurance Company, the respondent herein, seeking a declaratory judgment to

determine which of the insurers provided coverage for an injury resulting from an accident that occurred on September 28, 1964.

The appellant was the insurer of Marshall Farms Cooperative under a Comprehensive Liability General-Automobile policy, and the respondent insured Marshall Enterprises under a similar policy. Attached to the latter policy was an endorsement which excludes under certain circumstances losses which arise out of the loading or unloading of a motor vehicle.

Marshall Enterprises was engaged in the trucking business whose function was to receive live chickens from various points in South Carolina and other surrounding states and to transport such to Marshall Farms at their place of business in Greenville, South Carolina, where they were processed for market. On September 28, 1964, Marshall Enterprises brought to the premises of Marshall Farms a truck load of chickens, the said truck being operated by a regular driver of Marshall Enterprises. He parked the truck on the premises of Marshall Farms in an area designated for such and according to the requirements left the keys of the truck in the ignition switch. The truck driver then left the premises and had nothing further to do with the truck. This being in accord with custom. Thereafter, a regular employee of Marshall Farms did move the truck to a weighing station owned by it where the truck loaded with live chickens would be weighed and then the truck would be driven to the area where they were to be physically removed from the truck, and after the chickens had been so removed, the truck then empty, would be taken back to the weighing station a second time and, thereafter, back to its parking place. The two weighings were necessary in order to determine how many pounds of chickens had been delivered.

On September 28, 1964, while both of the aforesaid policies were in force and effect, one Leroy Garrett was injured as a result of being struck by a truck owned by Marshall Enterprises and which was being operated by an employee

of Marshall Farms. Garrett instituted suit against Marshall Farms and Marshall Enterprises, seeking damages for the personal injuries sustained, based upon the alleged negligence in the operation of the aforesaid truck under the circumstances heretofore outlined. Thereafter, there was an agreed settlement reached by which Garrett was paid the sum of $13,500.00, with each insurer advancing one-half thereof, or $6,750.00, with the understanding that each reserved all rights against the other as to who provided coverage for the damages. The appellant also incurred expenses and attorney fees in the defense of the action in the sum of $628.66. Home Indemnity instituted this action against Harleysville to recover the amount contributed by it towards the settlement plus the expenses and attorney fees, contending that the respondent provided full coverage under its policy. The respondent counterclaimed, contending *inter alia,* that it provided no coverage whatever and sought a recovery against the appellant in the amount of $6,750.00, being the amount it advanced towards the settlement.

This case came on for trial before The Honorable James H. Price, Jr., Judge of the Greenville County Court, and by agreement, was tried without a jury, based upon written stipulations and exhibits. The lower court concluded that Harleysville afforded no coverage to Marshall Farms and, accordingly, rendered judgment on its counterclaim against Home in the amount of $6,750.00. Home Indemnity Company has appealed from the aforesaid order and asserts that its policy does not provide coverage to Marshall Farms.

Harleysville's policy contained the following provisions:

"1. Coverage A—Bodily Injury Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, * * * sustained by any person and caused by accident.

\* \* \* \* \* \*

"The unqualified word 'insured' includes the named insured and also includes * * (2) under coverages A and B, any person while using an owned automobile or a hired

automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission, * * *.

* * * * * *

"Use of an automobile includes the loading and unloading thereof."

There are two theories in regard to liability under the "loading and unloading" clause of a liability policy. One is called the "coming to rest" doctrine. Under this doctrine "unloading" is given a narrow construction and is held to extend only to the actual lifting of the article from the motor vehicle to a place of rest outside the vehicle, and the connection of the vehicle with the process of unloading has ceased.

Under the "complete operation" doctrine, the "loading and unloading" clause covers the entire process involved in the movement of goods from the moment when they are given into the insured's possession until they are turned over at the place of destination to the party to whom delivery is to be made, and for all practical purposes, any distinction between "loading" and "delivery" is not considered. 95 A. L. R. (2d) 1129.

The effect of a "loading and unloading" provision is simply to expand the term "use of the vehicle" so that coverage will extend from the commencement of loading until the completion of unloading. *Truck Ins. Exchange v. Webb,* 256 Cal. App. (2d) 140, 63 Cal. Rptr. 791. In interpreting policy coverage all injuries arising out of unloading process in accordance with complete operation doctrine tests to determine if unloading has commenced are whether acts in progress at time of accident were necessary and integral to movement of goods from vehicle, whether they would have occurred but for need to move goods, and whether they were closely related in time and space to actual movement of goods from vehicle, *McCloskey & Co. v. Allstate Ins. Companies,* 123 U. S. App. D. C.

177, 358 F. (2d) 544. Where an employee of a building contractor was directing a concrete truck owned by a third party to a place on the construction premises where it was to unload the concrete, and an employee of a second contractor working on the premises was injured when a wheel of the truck became engaged in some ropes connected to a scaffold on which he was working, it was held in *Pellicano v. Royal Indem. Co.*, 35 Misc. (2d) 259, 229 N. Y. S. (2d) 654, that the employee's injuries came within the coverage of an insurance policy on the truck which contained a "loading or unloading" clause. Even though the insured vehicle had not commenced to discharge its load on the day of the accident, said the court, unloading in the sense of the "complete operation" doctrine commenced with the arrival of the truck upon the job site.

Prior to the accident in question a truck of Marshall Enterprises, driven by one of its regular employees, loaded with live chickens, was parked on the premises of Marshall Farms. When a truck loaded with live chickens arrived at the premises of Marshall Farms, it was required that such be parked in an area designated therefor. When space in the unloading area became available, it was the duty of Heyward Dotson, a regular employee of Marshall Farms, to drive the truck to scales for weighing and, thereafter, to place same in position for unloading. It was during this process that Leroy Garrett was struck and injured while the truck was being operated by the said Heyward Dotson. It is our conclusion, under the facts hereinbefore stated, that Dotson was engaged in the unloading process at the time of the injury to Garrett. What he was doing was an integral and necessary part of the unloading process and was closely related in time and space to the actual removal of the chickens from the truck. This conclusion is justified by application of the complete operation rule which we inferentially approved in the case of *Wrenn & Outlaw, Inc. v. Employers' Liability Assurance Corporation*, 246 S. C. 97, 142 S. E. (2d) 741.

Harleysville's liability policy contained an omnibus clause providing that the term "insured" includes the named insured and also any other person while using the insured truck with the permission or consent of the insured. The omnibus clause has been extended to cover third parties engaged in loading and unloading operations. In the case of *Standard Oil Co. of Texas v. Transport Ins. Co.,* Tex. Civ. App., 324 S. W. (2d) 331, it was held that under the Standard Automobile Liability Policy provisions not only covered the named insured but also anyone operating the vehicle with the named insured's permission and "loading and unloading" of the vehicle is such a permissive use as contemplated in the policy.

In a number of cases involving "loading and unloading" clauses, the injury was caused by the negligence of a stranger to the vehicle, that is, not by the insured or the insured's agents or servants. Where such stranger is found to be loading or unloading the vehicle, he will generally be covered as an additional insured within the meaning of the omnibus clause. Where the injury occurs while an employee of the consignor or consignee was directing or involved in loading or unloading operations, the act of such employee has generally been held to be "loading" or "unloading," so that the liability of the tortfeasor was covered by the policy on the insured's vehicle. 7 Am. Jur. (2d) Automobile Insurance, Section 89, page 396.

It is our conclusion that, under the facts of this case, the liability policy of Harleysville provided coverage under the omnibus insured clause and the loading and unloading clause for the reason that the truck of Marshall Enterprises was at the time of the injury to Garrett in the process of being unloaded, unless its policy afforded no coverage by virtue of an exclusionary endorsement attached to the policy. This endorsement is as follows:

"It is agreed that the insurance for Bodily Injury Liability and Property Damage Liability does not apply to injury, sickness, disease, death or destruction which arises out of the

loading or unloading of an automobile, if the accident occurs on premises (including the ways immediately adjoining) owned, rented or controlled either by the person or by the employer of the person against whom claim is made or suit is brought for such injury, sickness, disease, death or destruction. This limitation does not apply with respect to claims made or suits brought against the following insureds:

"(a) the named insured or, if the named insured is an individual, his spouse, if a resident of the same household;

"(b) a bailee or borrower of the automobile or an employee of either of them or of the named insured;"

It is stiplated that the accident in which Garrett received his injuries occurred on premises owned, rented or controlled by Marshall Farms, against whom the claim was made and suit was brought. If the exclusionary clause did not contain the provisions provided for in (b) thereof, Harleysville would not be liable. However, the limitation contained in the exclusionary clause does not apply with respect to claims made or suits brought against the bailee of the automobile or an employee thereof. It is the contention of Home that Marshall Farms was a bailee.

Bailment has been defined as the delivery of a chattel for some express or particular purpose upon a contract, express or implied, that, after the purpose has been fulfilled, then the chattel shall be redelivered to the bailor, or otherwise dealt with according to his directions. *Andrews v. Hurst,* 163 S. C. 86, 161 S. E. 331. Here, the truck of Marshall Enterprises, as distinguished from the live chickens on the truck, was delivered to Marshall Farms as a bailee so that the unloading thereof could be completed. The relationship here between Marshall Enterprises and Marshall Farms was that of bailor and bailee.

Insurers have the right to limit their liabilities and to impose whatever conditions they please on their obligations, provided that they are not in contravention of some statutory inhibition or public policy. Accord-

ingly, a clause in an insurance contract restricting liability or excluding coverage under certain conditions is valid. *Rhame v. Nat'l. Grange Mut. Ins. Co.*, 238 S. C. 539, 121 S. E. (2d.) 94. Here, the exclusion in Harleysville's policy for bodily injury liability, arising out of the loading and unloading of an automobile does not apply with respect to claims made or suits brought against a bailee of the automobile. Here, the express language of the exclusionary endorsement renders it inapplicable.

The exceptions of the appellant are sustained and the judgment of the lower court is reversed and the case remanded thereto so that judgment may be entered in favor of Home Indemnity Company.

Reversed and remanded.

LEWIS and LITTLEJOHN, JJ., concur.

BUSSEY and BRAILSFORD, JJ., concur in result.

BRAILSFORD, Justice (concurring) :

I concur in the result reached by the Chief Justice. However, I would arrive at this conclusion in one step instead of two. I see no necessity for invoking the loading and unloading clause, which in turn makes necessary a construction of the exclusionary clause relating to these procedures. At the time of the accident, the truck was actually engaged in the transportation of its cargo to scales on the premises. The injury-producing accident was an ordinary collision between a moving vehicle and a pedestrian. This use of the truck was with the permission of the insured and fastens liability upon the insurer. It is beside the point whether the transportation of the chickens to the scales was also the commencement of the unloading process. To say, as has frequently been done, that "(u)nder the 'complete operation' doctrine, the 'loading and unloading' clause covers the entire process involved in the movement of goods from the moment when they are given into the insured's possession until they are turned over at the place of destination to the party to whom delivery is to be made * * *" should not be applied

literally. What is actually meant is that an insurance contract, including a loading and unloading clause, provides coverage during the complete operation from the time that the insured takes possession of the goods until delivery is made.

"The phrase 'including the loading or unloading' has generally been recognized to be one of extension, expanding the expression 'use of the truck' beyond its connotation otherwise and covering operations or acts in which the movement of the truck itself does not play a part, * * *" 7 Am. Jur. (2d) Automobile Insurance, Sec. 87. Application of the clause is inappropriate here where the truck in motion was involved in the accident. In my view, this is a simple use case. Hence, Harleysville provided coverage.

BUSSEY, J., concurs.