20048

The TORRINGTON COMPANY, Appellant, v. The AETNA
CASUALTY & SURETY COMPANY, et al., Respondents

(216 S. E. (2d) 547)

*Messrs. Marvin R. Watson,* of Greenwood, and *Leatherwood, Walker, Todd & Mann,* of Greenville, *for Appellant,*

*Messrs. Love, Thornton, Arnold & Thomason,* of Greenville, *for Respondents,*

*Messrs. Marvin B. Watson,* of Greenwood, and *Leatherwood, Walker, Todd & Mann,* of Greenville, *for Appellant,* in Reply.

July 1, 1975.

LITTLEJOHN, Justice.

This case was heard in the Court of Common Pleas for Greenwood County before the Honorable George Bell Timmerman, Jr., presiding judge, without a jury, upon a stipulation of facts. It involves the construction of an insurance policy. The trial judge ruled that there was no coverage available to the plaintiff, Torrington Company. Torrington has appealed.

Aetna Casualty and Surety Company issued to Dan Byers Construction Company, Inc., its comprehensive liability insurance policy which was in force on August 17, 1965.

On August 17, 1965, Overnite Transportation Company was transporting on its truck a Heald Grinder owned by the plaintiff, Torrington Company, to Clinton, South Carolina, when the truck was involved in a collision with a train of the Piedmont and Northern Railroad Company in the town of Honea Path. The Heald Grinder, involved in this action, was not damaged in the train collision. Overnite employed Byers to go to the scene of the collision with its mobile crane and unload Torrington's Heald Grinder from the lowboy truck of Overnite onto the trailer of Byers and deliver the Heald Grinder to Torrington at its plant in Clinton.

While Byers, through its employees, was engaged in the act of removing the Heald Grinder from the lowboy truck of Overnite to the trailer of Byers, the machine fell and was damaged. The damage occurred when one of Byers' employees was operating a crane, with its cable which broke, causing the Heald Grinder to be dropped.

Thereafter Torrington sued Byers for damages to the Heald Grinder, and for loss of use thereof, resulting in a judgment in Torrington's favor for $73,078.83.

The judgment was not paid by Byers, and Torrington brought this action against Aetna in an effort to collect the debt. It is the contention of Torrington that Aetna's policy afforded coverage to Byers for the accident hereinabove described such that Aetna should pay, to the extent of the coverage, Torrington's judgment against Byers.

Aetna contends that it affords no coverage because of the exclusions in the policy. The insuring agreement has two coverages, each with exclusions, with which we are concerned. Coverage D relates to liability other than that

growing out of the use of an automobile. Relevant parts of D, together with the exception, read as follows:

"Coverage D—Property Damage Liability—Except Automobile

"To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident.

\* \* \*

"This policy does not apply:

\* \* \*

"(j) under Coverage D, to injury to or destruction of . . . (3) . . . property in the care, custody or control of the Insured or property as to which the Insured for any purpose is exercising physical control, . . .".

We are of the opinion that the insuring agreement would protect the insured Byers except for the exclusion quoted hereinabove. The Heald Grinder at the time of the damage was "property in the care, custody or control of the Insured or property as to which the Insured for any purpose is exercising physical control." There are many cases which have arisen out of the "care, custody or control" clauses included in many liability insurance policies. One of the leading cases is International *Derrick & Equip. Co. v. Buxbaum,* 240 F. (2d) 536, 62 A. L. R. (2d) 1237 (3rd Cir. 1957). The factual situation in that case is similar to the facts in this case. There, the plaintiff contracted to install a metal tower and antenna mast for a radio station. The plaintiff employed the defendant to raise the mast. Defendant furnished its own equipment, including the gin pole which he mounted on top of the tower to support the mast during the lift. While the mast was being raised the gin pole bent, and the mast fell and was damaged beyond repair. After judgment was entered against the defendant, an action was instituted by the plaintiff

against defendant's insurer. The court held that the defendant had "care, custody or control" within the meaning of the exclusion clause of the policy, and judgment in favor of the insurer was affirmed on appeal. The court said:

"[W]here the property damaged is under the supervision of the insured and is a necessary element of the work involved, the property is in the 'care, custody, or control' of the insured."

In an annotation on the subject found in 62 A. L. R. (2d) 1242, at p. 1244, it is stated:

"All the cases, with one exception, support the view, either expressly or by necessary implication, that the clause in a contractor's liability policy or similar policy excluding from coverage liability for damage to property 'in care, custody, or control of insured' contemplates what is called 'possessory handling' of the property, as distinguished from 'proprietary' control. In other words, the exclusion clause applies not only in situations in which the insured is the owner of the damaged property but also in cases in which his dominion over the property damage is not based on ownership."

We think that the language of the exclusion is clear and unambiguous such that no coverage is provided under Coverage D, and the trial judge correctly so ruled.

Coverage B, which relates to automobiles, with the exclusion, reads in pertinent part as follows:

"Coverage B—Property Damage Liability—Automobile

"To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the ownership, maintenance or use of any automobile.

\* \* \*

"This policy does not apply:

\* \* \*

"(e) under Coverage B, to injury to or destruction of property owned or transported by the Insured, or property rented to or *in charge of the Insured* other than a residence or private garage injured or destroyed by a private passenger automobile covered by this policy." (Emphasis added.)

It is the contention of Torrington that the damage to the Heald Grinder, including the loss of use thereof, was caused when Byers accidentally dropped the Heald Grinder as it was being loaded onto the trailer of Byers, and that the trailer is an automobile within the definition in the policy. It is Torrington's further contention that loading and unloading is a use of an automobile as contemplated by the policy under the "loading and unloading" cases. See *Home Indemn. Co. v. Harleysville Mut. Ins. Co.*, 252 S. C. 452, 166 S. E. (2d) 819 (1969). The contentions are meritorious and might entitle Torrington to recover except for exclusion (e). Byers was employed to use its own special equipment and its employees with their specialized skills to perform a job apparently beyond the capabilities of Overnite. Byers had dominion and control over the entire operation. We need not determine whether the loading was "transported by the insured" so as to come within the orbit of exclusion (e). It is sufficient to say that the damaged property was beyond question "in charge of the Insured" and accordingly the damage is not covered by the policy. *State Farm Mut. Auto. Ins. Co. v. Dorough*, 277 Ala. 662, 174 So. (2d) 303 (1965); *MacDonald v. Hardware* Mut. Cas. Co., 105 N. H. 458, 202 A. (2d) 489 (1964); also see cases collected in 10 A. L. R. (3d) 515.

The judgment in the amount of $73,078.83, in favor of Torrington against Byers, represented a $59,-306.50 claim for business interruption loss. The remainder of the judgment was for damage to the Heald Grinder itself and transportation costs. The plaintiff argues

vigorously that exclusion (e) does not apply to loss of use of the Heald Grinder and contends that in spite of exclusion (e) Aetna should be made to pay, at least to the extent of its coverage, the $59,306.50. Such argument is bottomed on the fact that Coverage B applies to "damages because of injury to or destruction of property, including the loss of use thereof," whereas the exclusionary clause does not use the same verbiage. It excludes "injury to or destruction of property." Nevertheless, we think it is the only reasonable construction of the contract that damages arising from loss of use were excluded. Aetna must pay only when there has been injury to or destruction of property for which it is liable. Since the injury to and/or destruction of property is not covered, the resulting loss of use is not covered. The provision for "including the loss of use thereof," is merely a parenthetical phrase expressly providing for consequential damages when the insurer is *otherwise* liable on the underlying claim. The loss of use grew out of the injury and/or destruction, and since the injury and/or destruction were excluded, the loss of use was excluded as a necessary consequence.

In concluding that the lower court should be affirmed, we have kept in mind our own line of cases holding that ambiguous insuring clauses should be liberally construed in favor of the insured. At the same time, the parties have a right to make their own contract and it is not the function of this Court to rewrite it or torture the meaning of a policy to extend coverage never intended by the parties. The contract must be interpreted in the light of the whole agreement in such a way as to carry out the intentions of the parties.

The lower court correctly disposed of the issues, and its judgment is

Affirmed.

Moss, C. J., and NESS, J., concur.

LEWIS and BUSSEY, JJ., *dissent*.

BUSSEY, Justice (dissenting):

A review of the record in this case in light of the applicable law convinces me that the lower court erred in more than one particular. The comprehensive liability policy issued by Aetna unquestionably afforded Byers protection under Coverage B unless such coverage was defeated by exclusion (e). It is stipulated that the injury to the grinder occured in the course of such being unloaded from the lowboy of Overnite onto the trailer of Byers. The vehicles of both Overnite and Byers were automobiles within the policy definitions and under Coverage B, Byers was afforded coverage for liability arising out of, *inter alia*, the "use of any automobile." The policy contained the following provision "use of an automobile includes the loading and unloading thereof." The damage to the grinder admittedly arose out of the activity of Byers wherein he was in the course of unloading the Overnite vehicle and loading the Byers vehicle. Therefore the accident clearly arose out of the use of the automobiles under the plain language of the policy.

The case of *Plaxco v. United States Fidelity & Guaranty Co.,* 252 S. C. 437, 166 S. E. (2d) 799, relied upon by the respondent for a contrary conclusion, is in point neither factually nor legally. In the instant case instead of there being a lack of causal connection, the unloading and loading operation constituted the use of the automobiles within the policy provision and moreover was the sole proximate cause of the damage to the grinder. Much more in point is the case of *Home Indemnity Company v. Harleysville Mutual Insurance Company,* 252 S. C. 452, 166 S. E. (2d) 819, and the authorities cited in the majority and concurring opinions.

For the purpose of this dissent I shall assume, without necessarily deciding, that the grinder was "in charge of" and/or "transported by" Byers at the time of the damage thereto and hence that by virtue of exclusion (e) Byers was afforded no coverage with respect to damages done to the grinder. This brings us to the most serious, if not the only, real issue in the case which has so far received scant judicial consideration. The repairs to the grinder consumed a substantial period of time with the result that Torrington suffered a heavy financial loss from the interruption of its business. In Torrington's suit against Byers it was found that damages to the grinder itself amounted to $13,605.66, but that Torrington also sustained damages in the amount of $59,306.50 as a result of the interruption of the operation of its plant and business while the grinder was being repaired. Torrington's judgment included both elements of damage and Byers liability to Torrington therefor is not challenged.

A principle contention of the appellant is that this latter loss was not excluded from coverage by exclusion (e), and if the appellant is correct in this contention, it becomes immaterial whether or not the damage to the grinder itself was covered since the policy limit is only $25,000.00 Under Coverage B the insurer agreed "To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident, etc."

The exclusionary language relied upon by appellant reads, "This policy does not apply to  *  *  * . (e) under Coverage B, to injury to or destruction of property owned or transported by, etc.  *  *  *." It is readily apparent that the insurance clause provides coverage with respect to injury to or destruction of property "including the loss of use thereof" whereas the exclusionary clause does not spe-

cifically exclude damages arising from the loss of use of property.

As contended by the appellant, the law is well settled that a policy clause extending coverage has to be liberally construed in favor of coverage while exclusionary clauses are construed against the insurer and given a more restrictive interpretation. *Buddin v. Nationwide Mutual Insurance Co.,* 250 S. C. 332, 157 S. E. (2d) 633. As we said in *Hann v. Carolina Casualty Insurance Co.,* 252 S. C. 518, 167 S. E. (2d) 420:

"It is settled beyond cavil in this jurisdiction that the terms of an insurance policy should be construed most liberally in favor of the insured, and that in case of conflict or ambiguity, a construction will not be adopted that defeats recovery if the policy is reasonably susceptible of a meaning that will permit recovery. We uniformly give the Insured the benefit of any doubt in the construction of the terms used in an insurance policy."

Torrington's right to use its grinder in the conduct of its business, free from the interference of others, either intentionally or negligently was in itself property, independently and separately from the grinder. See various cases collected in 34A Words and Phrases, Property p. 272. Here Torrington lost not only the use of the grinder, but the right to its use which right was in itself property, and additionally suffered damage through loss of use of its plant which was of course property.

Construing the insuring clause liberally in favor of the insured as the settled rule requires, *the loss of use of property constitutes in and of itself an injury to property independently of whether there is any other or direct injury to the property, the use of which is lost.* In the instant case Torrington lost, for a considerable period of time, the productive use of its plant, which of course was never in charge of or transported by Byers. By analogy, let us assume that,

instead of damaging the grinder, the transporting truck broke down through the negligence of the insured and the equipment was not damaged but greatly delayed in delivery with a resulting loss of use of the plant of Torrington. To use another analogy let us assume that the insured's truck, through negligent operation, destroyed utility lines leading into Torrington's plant to the extent that Torrington's plant was shut down for several days with resulting heavy loss to Torrington of the productive use of its plant. It would seem clear to me that in either of these analogous situations Coverage B would have afforded the insured protection against the claims of Torrington. The fact that the grinder was also damaged, should not deprive the insured of protection against Torrington's claim for the loss of use of its plant.

To return to the exclusionary clause, not only is coverage for a claim for loss of use not specifically excluded, but there was, under the terms of the insuring clause, injury to property and property interest of Torrington which were never in charge of, or transported, by the insured and hence as to these elements the exclusionary clause clearly could not have any application whatever.

The respondent places great reliance on the case of *Hardware Mutual Casualty Co. v. Mason-Moore-Tracy, Inc.* (2d Cir. 1952), 194 F. (2d) 173, a case substantially, though not precisely in point factually wherein the court held that the exclusionary clause excluded a claim for damages for loss of use. This case does not appear to me to be soundly reasoned and I find the same not at all persuasive. While no other case factually in point has been cited or come to the attention of the writer the general rule seems to be that where the property damaged is merely incidental to the property upon which work is being performed by the insured, such property is not in the charge, care, custody or control of the insured within the meaning of an exclusionary clause such as the one with which we are here in-

volved. See the Annotation in 62 A. L. R. (2d) 1242-1248, section 7.

In *Meadows & Walker Drilling Co. v. Pacific Employers Indemnity Co.*, 324 F. Supp. 282 (S. D. Texas, 1971), the court held a much broader exclusionary clause than the one here involved to be inapplicable to incidental damage to other property not in charge or custody of the insured.

In doing so, the court relied in part upon the Texas Supreme Court decision in *Goswick v. Employers' Casualty Co.*, 440 S. W. (2d) 287 (1969), which involved similar factual circumstances. The Federal Court said:

". . . Upon a review of the authorities which need not be repeated here, the Court held that the exclusion did not apply, and described the scope of the exclusion with textbook clarity:

'If the insured under such a policy is repairing or installing item No. 1 adjacent to item No. 2 and within the premises of a building, when his negligence causes damage to items No. 1 and No. 2, as well as to the building, the exclusion denies coverage only as to that property damaged which was within his possessory control. The cases have limited this "control" to the particular object of the insured's work, usually personalty, and to other property which he totally and physically manipulates . . .'

"The general rule has often been stated to this effect: where the property damaged is merely incidental to the property upon which the work is being performed by the insured, it is not considered as in such 'care, custody, or control' of the insured to be excluded under the policy."

I conclude that under the policy language and the weight of soundly reasoned authority Coverage B afforded Byers protection against liability for damages arising out of Torrington's loss of the productive use of its plant and that such was an injury to property which was never in charge

of or transported by Byers and that there is nothing whatever in the exclusionary clause which would defeat the coverage afforded under Coverage B. The judgment below should be reversed and a judgment entered in favor of the appellant, Torrington.

LEWIS, J., concurs.