1730

Jonathan McPHERSON, By and Through his Guardian ad Litem, Theresa McPHERSON, and the City of Charleston, Respondents-Appellants v. MICHIGAN MUTUAL INSURANCE COMPANY and The State Budget and Control Board of the State of South Carolina, Division of General Services Insurance Reserve Fund, Defendants, of whom The State Budget and Control Board of the State of South Carolina, Division of General Services Insurance Reserve Fund is, Appellant-Respondent.

(412 S.E. (2d) 445)

*Court of Appeals*

*Frank R. Ellerbe, III,* of *Robinson, McFadden & Moore,* and *William L. Pope,* of *Pope & Rodgers,* Columbia, *for appellant-respondent.*

*Robert G. Clawson, Jr.,* of *Clawson & Staubes, Ray P. McClain* and *G. Daniel Bowling,* Charleston, *for respondents-appellants.*

Heard April 16, 1991; Decided Dec. 2, 1991.

Reh. Den. Jan. 15, 1992.

BELL, Judge:

This is an action to recover money alleged to be due under a contract of liability insurance. Jonathan McPherson (by his guardian ad litem Theresa McPherson) and the City of Charleston, South Carolina, sued the South Carolina State Budget and Control Board Division of General Services Insurance Reserve Fund and the Michigan Mutual Insurance Company. The Insurance Reserve Fund is an agency of the State of South Carolina created to provide insurance coverage to governmental bodies. The Fund issued an automobile liability policy and a general tort liability policy to the City of Charleston. Michigan Mutual is a private insurance company which contracted with the Fund to reinsure all risks within the coverage of the general tort liability policy.

McPherson's claim arises from permanent brain injuries he received when he was struck by a police car owned by the City and operated by a City policeman in the course of his duties. The Fund denied the claim under the general tort liability policy, asserting that it came within an automobile exclu-

sion clause. The circuit court held the policy afforded coverage as a matter of law and granted summary judgment to McPherson and the City. The court also held McPherson and the City had no direct cause of action on the reinsurance contract and granted summary judgment dismissing the case against Michigan Mutual. The Fund appeals on the issue of coverage. McPherson and the City cross appeal on the issue of the reinsurer's contractual liability to them. We reverse the judgment on the coverage question and affirm on the question of the reinsurer's liability.

The facts material to the appeals are as follows. In 1986, McPherson sued the City and Wayne Sojourner, a City policeman. The complaint alleged two causes of action against each defendant: the first in common law tort and the second for acting under color of state law to deprive McPherson of his civil rights in violation of the Constitution and laws of the United States. After a mistrial due to juror misconduct, the case was settled.

The evidence showed the occurrence in question arose from a routine police call in the early morning hours of August 18, 1984. A resident of downtown Charleston telephoned the police department to report a prowler on Drake Street. The first police officer to respond was Kevin McGowan. He arrived in the vicinity, left his police car, and approached on foot a man fitting the description given by the caller. When he identified himself as a police officer, the suspect ran. McGowan gave chase on foot.

Officer Sojourner also responded to the Drake Street call. As Sojourner approached the vicinity in his police car, he heard McGowan radio that he was chasing the suspect down Reid Street. Sojourner turned into Reid Street. As he headed toward McGowan and the fleeing suspect, the suspect turned into America Street. Sojourner pursued in his automobile.

According to Sojourner's testimony, the suspect was running on the sidewalk on the right hand side of America Street. Sojourner drove his car down the center of the street. He first coasted abreast of the suspect to get a good look at him. He then intended to accelerate past the suspect to a point ahead of him, stop, get out of the car, and either pursue or block the suspect on foot while McGowan came from the rear. As Sojourner took his eyes off the suspect and looked ahead to

make sure there were no cars down the street, and just as he began to accelerate, he saw the suspect in his path. He jerked the steering wheel to the left. The suspect rolled over his hood and fell off the car to the left as Sojourner slammed on the brakes. The victim turned out to be McPherson. He was never arrested for or charged with any offense.

McPherson testified he was not the person seen by McGowan on Drake Street. He said he had spent the evening with friends at a party in the Elk's Hall on Cooper Street. After the hall closed, he started walking down America Street to go home. As he was walking down the sidewalk on the right side of the street, a car came and hit him. He did not remember if he tried to cross the street or how the accident occurred.

At trial, McPherson's theory was that he was an innocent passerby struck when Sojourner drove his car onto the curb while pursuing an unknown pedestrian suspect. McPherson maintained Sojourner engaged in a maneuver known as "channeling" in which the patrolman uses the patrol car itself to block the suspect's path, rather than blocking him on foot, as required by proper police procedure. This maneuver, he claimed, is an improper and reckless method of pursuing a pedestrian suspect.

At the time of the occurrence, the City had in effect two insurance policies issued by the Fund: an automobile liability policy and a general tort liability policy. The applicable limit of the automobile policy was $15,000; that of the general tort policy was $500,000. The City contended both policies covered McPherson's claim. The Fund acknowledged coverage under the automobile policy, but denied coverage under the general tort policy.

When the case resulted in a mistrial, McPherson and the City began negotiations to reach a settlement. The Reserve Fund declined to participate in these negotiations. A settlement was eventually reached.

Under the terms of the settlement, the City agreed to suffer judgment for $500,000, less a credit of $15,000 for proceeds from the automobile liability policy. In return, McPherson agreed to dismiss the action against Sojourner personally and to enter into a structured payment schedule requiring the City to pay McPherson $595 monthly for life plus certain costs

and attorney's fees. The parties also agreed to pursue an action against the Reserve Fund to collect insurance proceeds under the general tort liability policy. They entered a written stipulation for the allocation of these proceeds if the action against the Fund succeeded. The settlement was reviewed and approved by the circuit court. The court then entered a consent judgment against the City. This action followed.

## I.

The Fund argues that the general tort policy does not cover the City's liability to McPherson because of an automobile exclusion clause in the policy itself. The exclusion clause states:

> This insurance does not apply:
>
> \*   \*   \*   \*   \*   \*
>
> to personal injury or property damage arising out of the ownership, . . . operation, use, loading or unloading of
> (1) any automobile . . . owned or operated by . . . any insured, or
> (2) any other automobile . . . operated by any person in the course of his employment by any insured. . . .

Although the facts surrounding McPherson's injuries are vigorously contested, for purposes of this appeal, we assume McPherson was an innocent passerby struck by the City's police car while Sojourner was using it to "channel" a fleeing suspect. We further assume the City's own negligent failure to establish and enforce proper procedures regarding the use of police cars to apprehend fleeing suspects was a contributing proximate cause of McPherson's injuries. Thus, the question for our decision is whether, as a matter of law, the City's liability for personal injury to McPherson comes within the automobile exclusion quoted above. We hold the clause excludes coverage.

It is undisputed that the police car which struck McPherson was owned by the City and operated by Sojourner in the course of his employment. The critical issue is whether McPherson suffered injuries "arising out of" the ownership, operation, or use of the police car within the meaning of the exclusion clause.

The words "arising out of" in a liability insurance policy have a broader meaning than "caused by." They connote not only "causal relation to," but also "incident to," "flowing from," or "having connection with."[1] They import some relationship between the vehicle and the accident. *Continental Casualty Insurance Co. v. City of Richmond, supra.* Unless the injury is entirely disconnected from the ownership, operation, or use of an automobile, it falls within the "arising out of" provision. *Schmidt v. Utilities Insurance Co., supra; Shinabarger v. Citizens Mutual Insurance Co., supra.*

In this case, McPherson's injuries were, in fact, connected with the operation and use of the City's police car. The operation of the vehicle bore a direct causal relation to the accident in which McPherson was injured. Therefore, by the express terms of the City's general tort policy, its coverage "does not apply" to McPherson's injuries.

McPherson attempts to avoid this result by arguing that the City's failure to establish and enforce adequate procedures for the use of patrol cars was a concurrent cause of his injuries. He reasons that the doctrine of concurrent or contributing causation permits coverage of his common law and civil rights claims against the City for its own negligence. These claims, McPherson asserts, are separate from the City's vicarious liability for Sojourner's negligent operation of the patrol car.

It is well recognized that an act or omission need not be the sole cause of an injury to be a proximate cause. A given injury may result from multiple causes. *See Hughes v. Children's Clinic, P.A.*, 269 S.C. 389, 237 S.E. (2d) 753 (1977); *Shepard v. South Carolina Dept. of Corrections*, 299 S.C. 370, 385 S.E. (2d) 35 (Ct. App. 1989); *Cope v. Eckert*, 284 S.C. 516, 327 S.E. (2d) 367 (Ct. App. 1985). However, this case does not fall out-

---

[1] *See Plaxco v. United States Fidelity & Guaranty Company*, 252 S.C. 437, 166 S.E. (2d) 799 (1969); *Carter v. Bergeron*, 102 N.H. 464, 160 A. (2d) 348, 89 A.L.R. (2d) 142 (1960); *Schmidt v. Utilities Insurance Co.*, 353 Mo. 213, 182 S.W. (2d) 181, 154 A.L.R. 1088 (1944); *Shinabarger v. Citizens Mutual Insurance Co.*, 90 Mich. App. 307, 282 N.W. (2d) 301, 15 A.L.R. 4th 1 (1979); *Continental Casualty Insurance Company v. City of Richmond*, 763 F. (2d) 1076 (9th Cir. 1985); *Red Ball Motor Freight, Inc. v. Employers Mutual Liability Insurance Co.*, 189 F. (2d) 374 (5th Cir. 1951).

side the exclusion clause merely because the City's independent negligence may have concurrently caused McPherson's injuries. This is so for two reasons.

First, even under a theory of concurrent causation, the City's liability still arose from a category of injury specifically excluded by the insurance policy: i.e., injury arising out of the ownership, operation, or use of an automobile. Sojourner's operation and use of the patrol car was a factual predicate for the cause of action based on the City's failure to implement proper procedures and training with respect to "channeling." Without the automobile accident, McPherson would not have been injured. Without the injury, McPherson would have no claim against the City for improper procedure and training. Negligent failure to train and supervise as a distinct cause of action was not exclusive of, but rather was derived from, the ownership, operation, and use of the patrol car in this case. *See Continental Casualty Co. v. City of Richmond, supra; Lumbermens Mutual Casualty Co. v. Kosies,* 124 Ariz. 136, 602 P. (2d) 517 (Ct. App. 1979).

Second, the City's general liability policy does not insure against theories of liability; it insures against occurrences that cause injuries. Coverage does not turn on the legal theory upon which liability is claimed, but on the type of occurrence. *Farmers Insurance Group of Oregon v. Nelsen,* 78 Or. App. 213, 715 P. (2d) 492 (1986). The language of the exclusion is unqualified. It comprehends occurrences resulting from multiple causes as well as single causes. The decisive factor is whether any cause of injury involves an automobile owned by the insured. If the injury is related to the ownership, operation, or use of an automobile, it is immaterial that other causes may also have been involved. An automobile need not be the sole cause of the injury; it must simply be connected with the injury. Moreover, if the use of the automobile is one of the causes of the injury (which it clearly was in this case), a sufficient connection is established to trigger the exclusion even though there exists another concurring cause. *Shinabarger v. Citizens Mutual Insurance Co., supra.* To accept McPherson's contrary argument would require us to read into the ex-

clusion the words "arising *solely* out of"—words which are not there.[2]

McPherson also asserts the policy should be construed liberally in favor of coverage and strictly against exclusion. *See State Capital Insurance Co. v. Nationwide Mutual Insurance Co.*, 318 N.C. 534, 350 S.E. (2d) 66 (1986). This familiar canon of construction does not, however, permit the courts to torture the ordinary meaning of language to extend coverage expressly excluded by the terms of the policy. *See Torrington v. Aetna Casualty & Surety Co.*, 264 S.C. 636, 216 S.E. (2d) 547 (1975).

It would require a twisting of the language used in this exclusion clause to say that McPherson's injuries did not result from ownership, operation, or use of an automobile within the meaning of the insurance policy. *Cf., Rubins Contractors, Inc. v. Lumbermens Mutual Insurance Co.*, 821 F. (2d) 671 (D.C. Cir. 1987). The exclusion is unambiguously framed in terms of

---

[2] A split of authority exists among jurisdictions that have dealt with the multiple causation issue. Where an instrumentality specified in the exclusion clause was one of the causes of the injury, the majority of courts reject multiple causation arguments similar to the one advanced by McPherson in this case. *See, e.g., Continental Casualty Company v. City of Richmond, supra; Rubins Contractors, Inc. v. Lumbermens Mutual Insurance Co.*, 821 F. (2d) 671 (D.C. Cir. 1987); *Farmers Insurance Group of Oregon v. Nelsen, supra; Lumbermens Mutual Casualty Company v. Kosies, supra; State Farm Fire & Casualty Co. v. McGlawn*, 84 Ill. App. (3d) 107, 39 Ill. Dec. 531, 404 N.E. (2d) 1122 (1980); *Great Central Insurance Co. v. Roemmich*, 291 N. W. (2d) 772 (S.D. 1980). The contrary cases holding that a general liability policy affords coverage when at least one multiple cause of the injury does not come within the scope of the exclusion are not as well reasoned and, for the most part, are distinguishable on their facts. In some, the insured's automobile did not physically cause the injury. *See LeJeune v. Allstate Insurance Co.*, 365 So. (2d) 471 (La. 1978); *Curry v. Iberville Parish Sheriff's Office*, 405 So. (2d) 1387 (La. App. 1981); *Warner Hardware Co. v. Allstate Ins. Co.*, 309 Minn. 529, 245 N.W. (2d) 223 (1976). In others, the insured apparently was not covered by his separate automobile liability policy. *Upland Mutual Insurance Co., Inc. v. Noel*, 214 Kan. 145, 519 P. (2d) 737 (1974). In still others, a jury returned a general verdict on several independent causes of action, one of which did not come within the policy exclusion and was sufficient, standing alone, to support the verdict. *See United States Fidelity & Guaranty Co. v. State Farm Mutual Automobile Insurance Co.*, 152 Ill. App. (3d) 46, 105 Ill. Dec. 254, 504 N.E. (2d) 123 (1987). Other cases cited by McPherson turn on construction of the language of the exclusion rather than independent causation analysis. We discuss the issue of construction below.

the instrumentality causing the harm—an automobile. Ordinary usage suggests no reason to narrow the exclusion by introducing a factor to which it makes no reference at all: i.e., the legal theory underlying the insured's liability to the injured party. *Id.* We will not force the plain language of the exclusion clause to create an ambiguity so that we may resolve it against the insurer. *See City of Manchester v. General Reinsurance Corp.*, 127 N.H. 806, 508 A. (2d) 1063 (1986).

We reverse the circuit court on the issue of coverage.

Since we hold McPherson's injuries are not covered by the general tort liability policy, we also reverse the circuit court's decision to award the City attorneys' fees and costs. The court awarded the fees and costs to the City for establishing coverage under the policy. However, McPherson's injuries were excluded under the policy. The Fund properly denied coverage to the City and the insurance agreement was not breached. Therefore, the circuit court should not have awarded attorneys' fees and cost.

## II.

Our decision regarding the coverage question also disposes of the issue of Michigan Mutual's liability on its contract of reinsurance with the Fund. Since the Fund is not liable to provide coverage under the general tort liability policy, Michigan Mutual is not liable under the reinsurance contract. However, even if the Fund were liable, McPherson and the City would have no direct cause of action against Michigan Mutual. As a reinsurer, Michigan Mutual has no contractual relationship with the Fund's insureds and may not be sued by them. A contract of reinsurance is a contract of indemnity which flows only to parties in privity of contract with the indemnitor. The original insured (here the City) may not sue the reinsurer (here Michigan Mutual), because there is no privity of contract between them. The right to indemnity is personal to the indemnitee and creates no legal or equitable interest in third party beneficiaries by contract or by lien. *See United States v. Federal Surety Co.*, 5 F. Supp. 247 (D. Md. 1933), affirmed, 72 F. (2d) 964 (4th Cir. 1934), *cert. denied*, 294 U.S. 711, 55 S. Ct. 508, 79 L. Ed. 1245 (1935); *Schuylkill Products, Inc. v. H. Rupert & Sons, Inc.*, 305 Pa. Super. 36, 451 A. (2d) 229 (1982). Accordingly, we affirm the circuit court on this issue.

Affirmed in part, reversed in part.

CURETON and GOOLSBY, JJ., concur.

