THIS OPINION HAS NO PRECEDENTIAL 
 VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT 
 AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Keisha Norris,       
Appellant,
 
 
 

v.

 
 
 
Allstate Insurance Company,       
Respondent.
 
 
 

Appeal From Spartanburg County
J. Derham Cole, Circuit Court Judge

Unpublished Opinion No. 2005-UP-124
Heard January 12, 2005  Filed February 
 17, 2005

AFFIRMED

 
 
 
Andrew N. Poliakoff, of Spartanburg, and M. Celia Robinson, 
 of Columbia, for Appellant.
W. Francis Marion, Jr., of Greenville, for Respondent.
 
 
 

HUFF, J.:  Keisha Norris, sister 
 of the deceased, Tony Woodward, appeals the trial courts grant of summary judgment 
 to Allstate Insurance Company from an action for declaratory judgment as to 
 whether Allstate provided insurance coverage for a shooting incident resulting 
 in Tony Woodwards death.  We affirm.
FACTUAL/PROCEDURAL BACKGROUND
In June 1999, Ricky Hull, a passenger 
 in an automobile operated by Roshaun Hall, shot and killed Tony Woodward, a 
 pedestrian walking down a street in Spartanburg County.  The vehicle driven 
 by Roshaun Hall was insured by Allstate Insurance Company.  Ricky Hull subsequently 
 pled guilty to murder, while Hall pled guilty to assault with intent to kill.  

Norris, Woodwards sister, brought this 
 declaratory judgment action to determine whether the Allstate policy on Halls 
 vehicle covered the incident.  Both parties filed motions for summary judgment.  
 The trial court, relying on State Farm Mut. Auto Ins. Co. v. Bookert, 
 337 S.C. 291, 523 S.E.2d 181 (1999), granted Allstates motion for summary judgment 
 finding the incident was not foreseeably identifiable with the normal use of 
 an automobile.  The court further found the insuring language in the policy 
 that included loading or unloading of the insured vehicle did not apply to 
 provide coverage as there was no evidence an accident occurred when the vehicle 
 was being loaded or unloaded.  The trial court subsequently denied Norris motion 
 for reconsideration.  This appeal followed.
LAW/ANALYSIS

 Norris argues Woodwards 
 injuries were sustained while the insured vehicle was being put to the normal 
 and foreseeable use of transportation, and the vehicle was an active accessory 
 to the injuries such that coverage from the policy applies under South Carolina 
 law.  We disagree.
This case is controlled 
 by our Supreme Courts decision in State Farm Mut. Auto. Ins. Co. v. Bookert, 
 337 S.C. 291, 523 S.E.2d 181 (1999).  In reversing this courts decision finding 
 coverage, the Supreme Court in Bookert determined injuries to Bookerts 
 son were not foreseeably identifiable with the normal use of an automobile 
 where the assailant shot Bookerts son from an automobile as her son was about 
 to enter a restaurant.  The Supreme Court noted the following stipulated facts 
 in Bookert:

Marys son, respondent Michael 
 Bookert, is an insured under Marys policy.  Michael and some friends stopped 
 at a Hardees, where two soldiers and about fifteen other young men became involved 
 in an altercation.  Michael and his friends left and went to a McDonalds, as 
 did some of the fifteen men from Hardees.  The two soldiers, who were armed, 
 picked up a third soldier and drove to the McDonalds where they circled the 
 parking lot, looking for the Hardees men.  As Michael was about to go in the 
 restaurant, he heard the soldiers yelling, and turned in their direction.  The 
 soldiers vehicle was stopped in the traffic lane with its motor running, one 
 soldier in the back holding a shotgun while the front passenger brandished a 
 handgun.  The vehicle jerked forward, the soldier wielding the shotgun fell, 
 and fired his gun.  Michael was not hit by the shotgun pellets, but while the 
 vehicle was still moving forward, the passenger fired the handgun striking Michael 
 with a bullet in each leg.

Id. at 292-93, 523 S.E.2d 
 at 181-82.  
Norris attempts to distinguish 
 Bookert from the facts of this case asserting that in Bookert, 
 the car was stopped with its engine running and the only movement of the vehicle 
 came when the car jerked at which point shots were fired.  Thus, Norris contends 
 the transportation requirement was not met in Bookert, accounting for 
 the courts determination that there was no coverage.  We first note that the 
 Supreme Court did not rely on the transportation requirement in Bookert, 
 but instead relied on the foreseeability factor in denying coverage.  At any 
 rate, the stipulated facts in Bookert do not indicate the vehicle was 
 stopped when Bookerts son was shot.  To the contrary, the court clearly stated 
 Bookerts son was shot while the vehicle was still moving forward.  Because 
 we can discern no material distinction from the facts at hand and the facts 
 in the Bookert case, we find no error in the trial judges determination 
 there was no coverage because the incident was not foreseeably identifiable 
 with the normal use of an automobile.
Norris also claims that the trial court erred in 
 granting summary judgment because the policy in question covered loading and 
 unloading of a vehicle, thereby expanding the coverage to include the negligent 
 loading of dangerous passengers.  We disagree.
The Allstate policy provides coverage for claims 
 for accidents arising out of the ownership, maintenance or use, loading or unloading 
 of an insured auto.  Norris argues that Hall was negligent or reckless in loading 
 Hull as a passenger when he had knowledge that Hull had dangerous propensities 
 and the trial court therefore erred in granting summary judgment to Allstate.  
 We refuse to accept this illogical construction.  Woodward was not injured by 
 any activity that occurred during the actual loading or unloading of Hull, nor 
 was he injured as a result of any activity necessary or integral to the loading 
 or unloading of Hull.  See Home Indem. Co. v. Harleysville Mut. Ins. 
 Co., 252 S.C. 452, 457, 166 S.E.2d 819, 822 (1969) (where a policy includes 
 a loading and unloading provision, the complete operation doctrine provides 
 the test to determine whether unloading has commenced is whether the acts in 
 progress at the time of the accident were necessary and integral to the movement 
 of goods from the vehicle, whether they would have occurred but for the need 
 to move the goods, and whether they were closely related in time and space to 
 the actual movement of goods from the vehicle).  Further, even though the loading 
 and unloading provision is an expansion of coverage, coverage is still only 
 expanded to claims for accidents arising out of . . . loading or unloading 
 of an insured auto.  Such a negligent loading theory as advocated by Norris 
 gloss[es] over the critical causal relation test.  Nationwide Mut. Ins. 
 Co. v. Brown, 779 F.2d 984, 988 (4th Cir. 1985).  The accident 
 upon which insurance coverage is claimed must bear a causal relation or connection 
 with the loading or unloading of the insured automobile.  Here, there simply 
 is no such connection.
For the foregoing reasons, the order of the trial 
 court granting summary judgment to Allstate is 
AFFIRMED.
CURETON, AJ., concurs.
BEATTY, J.:  Although I agree with the majoritys 
 finding that we are bound by the holding in State Farm Mutual Auto Insurance 
 v. Bookert, 337 S.C. 291, 523 S.E.2d 181 (1999), I write separately to express 
 some concerns regarding the similarities in this case to valid prior caselaw.
In Wausau Underwriters Insurance Company 
 v. Howser, 309 S.C. 269, 422 S.E.2d 106 (1992), the victims car was bumped 
 and she was eventually shot by an unknown driver of another car.  In answering 
 a question certified from the United States Court of Appeals for the Fourth 
 Circuit, our state supreme court found a causal connection, holding the victims 
 injuries arose out of the use of the assailants vehicle:  Only through use 
 of his vehicle was the assailant able to closely pursue Howser, thereby enabling 
 him to carry out the pistol assault.  The gunshot was the culmination of an 
 ongoing assault, in which the vehicle played an essential and integral part.  
 Howser, 309 S.C. at 273, 422 S.E.2d at 108.
Our state supreme court similarly found 
 a causal connection in Home Insurance Company v. Towe, 314 S.C. 105, 
 441 S.C.2d 825 (1994).  In that case, the passenger in Towes moving car threw 
 a bottle at a road sign and inadvertently struck the victim on his tractor.  
 Our state supreme court determined there was a causal connection between the 
 use of Towes automobile and the victims injuries:  The use of the automobile 
 placed Alexander in the position to throw the bottle at the sign and the vehicles 
 speed contributed to the velocity of the bottle increasing the seriousness of 
 McCaskeys injuries.  Towe, 314 S.C. at 107, 441 S.E.2d at 827.
I am unable to distinguish the facts of 
 the present case from Howser and Towe.  The victim in the present 
 case was pursued and shot by assailants in a moving vehicle.  The vehicle played 
 an essential and integral part of the assault, allowing the assailants to 
 closely pursue the victim.  I find Bookert to be in conflict with Howser 
 and Towe.  Absent Bookert, I would be inclined to find there was 
 a causal connection between the use of the vehicle and the shooting of the 
 victim because the use of the vehicle played such an integral role in this case.  
 The Bookert court found that the gun shot injuries were not foreseeably 
 identifiable with the normal use of the vehicle.  Bookert, 337 S.C. at 
 293, 523 S.E.2d at 182.  Since the decision in Bookert (1999), it is 
 arguable that drive-by shootings are foreseeably identifiable with the normal 
 use of a vehicle. [1]   The use 
 of a motor vehicle is a necessary part of a drive-by shooting.
Until our Supreme Court overrules Howser, 
 we must assume that the fact that an assailant fired a gun from an automobile 
 does not automatically defeat coverage by the automobiles insurer.  Although 
 it is certainly arguable that today, drive-by shootings are foreseeably identifiable 
 with the normal use of an automobile, I nevertheless believe this court is bound 
 by the finding in Bookert of no causal connection.  Accordingly, I concur.

 
 
 [1] According to unofficial data from SLED, drive by shootings in South 
 Carolina have increased from 2 in 1999 to 41 in 2003 (the latest figures available).